KEARNEY ELECTRIC COMPANY v. BRIDGET LAUGHLIN,
ADMINISTRATRIX.

FILED JUNE 18, 1895.   No. 6431.

1. Death by Wrongful Act: ACTION FOR DAMAGES: PARTY
PLAINTIFF: SUFFICIENCY OF PETITION: CONSTRUCTION OF
STATUTE. A widow, as administratrix, sued a corporation for
negligently causing the death of her husband.   The action was

based on chapter 21, Compiled Statutes, 1893. The petition alleged that the deceased left seven minor children, the oldest thirteen years and the youngest five months of age, "wholly dependent" on the deceased " for their support and maintenance." *Held*, (1) That the petition was not open to the objection that it did not aver facts showing that the persons for whose benefit the suit was brought had, by reason of the death of the intestate, sustained pecuniary injuries within the meaning of said statute; (2) that the words "support and maintenance," as used in the petition, meant food, clothing, and shelter; and the words "wholly dependent" implied that the deceased was the person, and the only person, whose legal and moral duty it was, and to whom the children looked, and upon whom they relied, to furnish the necessaries of life; (3) that it is not absolutely necessary that a petition based on this statute should contain the words, "damage, injury, or loss." It is sufficient in that respect if it appears from the averments of the petition that by reason of the death of the intestate a pecuniary loss, injury, or damage has resulted to the wife and next of kin of the deceased.

2. ———: CONSTRUCTION OF STATUTE. Such an action as the one at bar was unknown to the common law, and is purely a creature of statute; but solely because of that the courts will not give the statute a technical or narrow construction.

3. ———: ———. Whether the rule of the common law, that statutes in derogation thereof are to be strictly construed, is in force in this state, doubted.

4. ———: NEGLIGENCE: EVIDENCE. The intestate was killed by the caving in of the earth while driving a tunnel for the corporation. The evidence, set out at length in the opinion, examined, and *held* to support the finding of the jury that the negligence of the corporation was the proximate cause of the death of the intestate.

5. Master and Servant: RISK OF EMPLOYMENT: DEFECTIVE MACHINERY. The rule that a servant by his contract of employment assumes the ordinary risks and dangers incident thereto cannot be successfully invoked as a defense by a master, unless he shows that the machinery, tools, and appliances furnished by him to the servant were reasonably safe and fit for the performance of the work in hand, and which the servant in the execution of his work, by the exercise of ordinary care on his part, might use with reasonable safety to himself; and that the appliances, machinery, or tools, which caused the injury to the servant, were, when used by him, obviously defective and dangerous. (*Missouri P. R. Co. v. Baxter*, 42 Neb., 793.)

6. **Review**: Rulings on Evidence: Assignments of Error. Under an assignment that the court erred in admitting or rejecting evidence this court cannot review anything. Under an assignment that the court erred in admitting the evidence of a named witness, if the record shows that any part of the evidence of such witness was properly received, the assignment will be overruled.

7. **Master and Servant**: Negligence: Instructions. On the trial, the court instructed the jury as follows: "You are to determine from all the facts and circumstances, as shown by the evidence, whether the deceased was exposed to unusual or extraordinary danger in digging the tunnel; and if you find that he was, this would be negligence on the defendant's part and the plaintiff could recover," etc. *Held*, (1) That the court might have properly told the jury that if the deceased, by working in the tunnel at the time and in the manner and under the circumstances that he did, was thereby exposed to unusual or extraordinary danger without knowing it and without opportunity to know it, that that fact was evidence of negligence on the part of the company; but it was not for the court to say that the fact rendered the company guilty of negligence; whether it did was for the jury; (2) that the giving of the instruction was reversible error.

8. ———: ———: ———. On the trial the district court instructed the jury as follows: "If the danger was unusual and not incident to the employment, and the employe had no knowledge of the unusual danger, and could not with ordinary care and prudence have discovered it, he would not be deemed to have consented to incur such unusual risk." *Held*, That the instruction was correct.

Error from the district court of Buffalo county. Tried below before Holcomb, J.

The facts are stated by the commissioner.

*Marston & Nevius*, for plaintiff in error:

The petition does not state a cause of action. (*Hurst v. Detroit City R. Co.*, 84 Mich., 539; *Perry v. Georgia Railroad & Banking Co.*, 11 S. E. Rep. [Ga.], 605; *Smith v. East and West R. Co.*, 10 S. E. Rep. [Ga.], 602; *Pennsylvania R. Co. v. Lilly*, 73 Ind., 254; *Gilligan v. New York*

& H. R. Co., 1 E. D. Smith [N. Y.], 453; Baldwin v. Western Railroad Corporation, 4 Gray [Mass.], 333; Tomilson v. Derby, 43 Conn., 562; Taylor v. Monroe, 43 Conn., 42; Dunn v. Cass Avenue Street R. Co., 21 Mo. App., 205; Matthews v. Missouri P. R. Co., 26 Mo. App., 84.)

In support of the contention that there was not sufficient evidence to support the verdict and none to show negligence on part of plaintiff in error, counsel cited the following authorities: Wood, Master & Servant, sec. 382; Rasmussen v. Chicago, R. I. & P. R. Co., 21 N. W. Rep. [Ia.], 583; Olson v. McMullen, 24 N. W. Rep. [Minn.], 318; Peterson v. City of Rushford, 42 N. W. Rep. [Minn.], 1063; Songstad v. Burlington, C. R. & N. R. Co., 41 N. W. Rep. [Dak.], 755; Simmons v. Chicago & T. R. Co., 110 Ill., 340; Naylor v. Chicago & N. W. R. Co., 53 Wis., 661; Leonard v. Collins, 70 N. Y., 90; District of Columbia v. McElligott, 117 U. S., 621; Tuttle v. Detroit, G. H. & M. R. Co., 122 U. S., 189; Griffin v. Ohio & M. R. Co., 24 N. E. Rep. [Ind.], 888.

There was error in the instructions of the court. (City of Plattsmouth v. Mitchell, 20 Neb., 228; Stevens v. Howe, 28 Neb., 547; Johnson v. Missouri P. R. Co., 18 Neb., 690; Village of Orleans v. Peny, 24 Neb., 831; Gravelle v. Minneapolis & St. L. R. Co., 11 Fed. Rep., 569; Wolcott v. Studebaker, 34 Fed. Rep., 8; Anderson v. Winston, 31 Fed. Rep., 528; Quincy v. Kitts, 3 N. W. Rep. [Mich.], 240; Pittsburgh, C. & St. L. R. Co. v. Adams, 5 N. E. Rep. [Ind.], 187; Reese v. Biddle, 3 Atl. Rep. [Pa.], 813.)

Oldham & Murphy, contra.

RAGAN, C.

Bridget Laughlin, as administratrix of the estate of Daniel Laughlin, deceased, sued the Kearney Electric Company (hereinafter called the "company") in the district court of Buffalo county for negligently, as she alleges,

causing the death of her intestate and husband. The administratrix had a verdict and judgment, and the company, to reverse said judgment, has prosecuted to this court a petition in error, assigning the following errors:

1. That the petition of the administratrix does not state a cause of action. The petition, among other things, contained the following averments: "That the deceased, Daniel Laughlin, died intestate and left surviving him as heirs of his estate and his next of kin the plaintiff, who was his wife, and the following named minor children, namely, Nora, age thirteen years; May, age twelve years; Kate, age ten years; Margaret, age eight years; James, age six years; Daniel, age five years; Michael, age three years; and Samuel, age five months; that the plaintiff and above named children were wholly dependent on the said Daniel Laughlin for their support and maintenance." This assignment is predicated upon the contention that there is no allegation in the petition that the widow or her children have suffered any pecuniary damage by reason of the death of the intestate. This action is brought under chapter 21, Compiled Statutes, 1893, which provides:

"Sec. 1. That whenever the death of a person shall be caused by the wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 2. That every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of

such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars; *Provided,* That every such action shall be commenced within two years after the death of such person."

It is not doubted that the petition based on this statute must aver facts showing that the persons for whose benefit the action was brought have, by reason of the death of the intestate, sustained pecuniary loss, injury, and damages. Such an action as the one at bar was unknown to the common law. It is purely a statutory action; but solely because of that the courts will not give it a technical or narrow construction. Indeed, it is doubtful whether the rule of the common law, that statutes in derogation thereof are to be strictly construed, is in force in this state. The courts are prohibited by positive statute from applying such rule to any of the provisions of the Code of Civil Procedure. (See sec. 1, Code of Civil Procedure.) The petition assailed alleges that the widow and administratrix and her minor children were wholly dependent upon the deceased for support and maintenance. "Support and maintenance," as here used, mean food, clothing, and shelter. The words " wholly dependent," as here used, fairly imply that the deceased was the person, and the only person, whose legal and moral duty it was, to whom they looked and upon whom they relied, to furnish the necessaries of life; and the result of the decease of this man was to inflict upon his widow and minor children a pecuniary loss. A pleader should state the facts which constitute his cause of action or defense; but it is not absolutely necessary in such an action as the one at bar that the petition should contain the words "dam-.

age, injury, or loss." It is sufficient in that respect if it appear from the petition that by reason of the death of the intestate that a pecuniary loss has resulted to the wife and next of kin of the deceased. We have examined the cases cited by counsel for the company in support of his contention that the petition in this action does not state a cause of action. Some of these authorities we do not regard as being in point, and others, if in point, we are not disposed to follow. The case of *Hurst v. Detroit City R. Co.*, 48 N. W. Rep. [Mich.], 44, cited by counsel to support his argument, was a suit brought by a father as administrator of his deceased child, a year and eleven months old, under a statute similar in its terms to the one quoted above. The petition alleged that the Detroit City railway had negligently caused the death of the child. The court said: "No proof was made by the plaintiff of any pecuniary loss, and there is no such allegation in the declaration." It will thus be seen that this case is not an authority for the contention of counsel for the company here. We think the petition assailed states a cause of action.

2. The second assignment is that the finding of the jury, that the negligence of the company was the proximate cause of the death of Laughlin, is not supported by sufficient evidence. The record contains no cut or drawing showing the situation and the place of the company's works where Laughlin was killed; but from the evidence it seems that on the day before the unfortunate casualty the situation of the company's works and the place where the casualty occurred were as follows:

A, B, C, D represent a part of a canal —— feet wide and thirty feet deep, which had been constructed some six years. E, F, G, H represent the survey of another canal to be constructed opening into the first. E, F, M, L and O, N, G, H represent parts of the second canal complete. L, M, N, O represent unexcavated ground through which a tunnel was to be constructed, and said tunnel had already been driven from the line O, N to the line P, P. On the afternoon of April 7, 1891, the canal, E, F, M, L, formed a *cul-de-sac*, the line L, M being a dirt wall —— feet wide and thirty feet high. This wall at that time was

not perpendicular, as Laughlin, prior to said date and pre-
paratory to commencing driving the tunnel east from the
line L, M, had cut or sloped off the wall, L, M, from the
top of the proposed tunnel, R to S. It seems that the
company was engaged at the city of Kearney, in this state,
in the manufacture and sale of electricity for illuminating
and power purposes, and had its power house located on or
near the canal previously constructed from the Platte river
to a point at or near the property of the company described
above. Laughlin had been in the employ of the com-
pany for something over two years. He was familiar with
the improvements made and being constructed. He had as-
sisted in cutting the canal, E, F, M, L and H, O, N, G
and in constructing part of the original tunnel, represented
by P, P, N, O. One O'Brian, a civil engineer, was the gen-
eral superintendent of the company, and the engineer who
planned for the company the improvements made and under
way. He had under him a man named Hanlon, who was
a general foreman. There was a man named Cleary, also
in the employ of the company, who was foreman of and
in control of men while they were working on the canal
and tunnel. Laughlin was not employed for any specific
purpose, nor did he perform any particular work. He was
subject at all times to the orders of O'Brian. When at
work anywhere outside the canal or tunnel he seems to
have been subject to the orders of Hanlon, and when at
work in the tunnel or canal, under the direction of Cleary.
On the afternoon of April 7 the two men, Cleary and
Laughlin, began the work of driving the tunnel east from
the line L, M. After excavating for a short distance, or
forming the beginning or mouth of the tunnel, to prevent
the earth composing the roof of the tunnel from caving or
falling, they put a board or plank three inches thick and
sixteen inches wide across the roof or mouth of the tunnel
overhead and supported it by upright timbers. Cleary and
Laughlin performed some little work that afternoon towards

the excavation.   The next day Laughlin worked alone in the tunnel, and after he had driven it in several feet beyond the plank support, above mentioned, the tunnel above him "caved in," the earth fell on him, and he was killed. O'Brian, the superintendent, had laid out the plan for this work and given Cleary general directions as to how the tunnel should be supported while in process of construction.   The superintendent was present when Cleary and Laughlin put in the supports at the mouth of the tunnel, or very soon afterwards, and approved the supports made and the way in which they were made.   He directed Cleary to use the timbers which he and Laughlin did use, and instructed him how to construct the supports.   The superintendent was in the tunnel the day Laughlin was killed while he was at work and again examined the supports.   On the trial the superintendent testified as follows:

Q. It is not necesssary to wall the top of your tunnel?

A. In our work I timbered every foot just as we went along with posts.

Q. You considered in order to make proper protection and to make it safe was to prop every foot?

A. I don't mean to prop every foot, but the timbers extended along the whole length.

Q. There should be some support on top of the tunnel all along in order to take proper precaution?

A. I will say, generally, that is the way we did it.

Q. You did it for the purpose of protecting the men and guarding against the caving in of the tunnel?

A. Yes, sir; and it might be to keep the shape of the tunnel.   No great amount of earth can fall out of an arch in this country.

Q. The top of the tunnel had not been walled up?

A. No, sir.

In the last answer of this witness he is speaking of that part of the tunnel in which Laughlin met his death.   In the former questions he is speaking about that part of the

tunnel represented by O, P, P, N, which had been constructed prior to the time Laughlin was killed. No person but Laughlin appears to have worked in the tunnel the day he was killed. Nor does the evidence show that the superintendent, or any one else, instructed Laughlin to build supports to the roof of the tunnel as fast as the driving proceeded; nor that the company, or any of its officers, took any steps looking to that end, although they knew that Laughlin was at work therein; and it is not claimed that any other support was ever placed in the tunnel where the accident happened than the one built by Laughlin and Cleary when the work was begun. We think that the failure of the company and its officers to give any instructions or to take any steps looking to the bracing and the propping of the roofs of this tunnel as the work of driving it proceeded was sufficient evidence of negligence on the part of the company to support the finding of the jury that such negligence was the proximate cause of Laughlin's death.

3. Another assignment is that the finding of the jury, that the negligence or contributory negligence of Laughlin was not the proximate cause of his death, is not supported by sufficient evidence. The facts have already been stated. While the act of Laughlin in driving or excavating the tunnel to a point several feet beyond the plank support that he and Cleary had put at the mouth of the tunnel, without first putting up other supports, was evidence of negligence on his part, yet it was for the jury to say from this evidence whether by digging and excavating beyond the support at the time and under the circumstances that he did he was thereby guilty of negligence.

It is said in argument here that Laughlin was not ordered to work in the tunnel; that he was there voluntarily; but this argument falls to the ground in the face of the evidence which shows that Laughlin was an employe of the company; that he worked wherever he was directed to

work, and was told that when he had nothing else to do that he might work in the tunnel. The superintendent of the company—the reading of whose evidence impresses one with the idea that he is not only a skillful engineer and a truthful witness, but also a gentleman imbued with the cultured instincts of humanity—testifies that Laughlin was a ready and willing servant; that he was always at work somewhere, could always find something to do; that he, the superintendent, was in the mouth of the tunnel a few hours before Laughlin was killed, examined the supports, thought they were sufficient, and he does not say nor pretend that he ever suggested to Laughlin or any one else the necessity of building any other support in the tunnel than the one there. The result shows that the engineer was mistaken as to the sufficiency of these supports. He had had years of experience in tunneling. We think that the jury made no mistake under all this evidence when it said in effect that Laughlin was not guilty of negligence by remaining in this tunnel and continuing this excavation, as he had a right to rely upon the vigilance, the knowledge, and the judgment of his superintendent; that if there was any probability of the earth caving, or any necessity for additional supports, the superintendent would have spoken. The superintendent did not speak. His silence perhaps was Laughlin's death warrant; and though his failure to speak was the result of honest mistake on his part, that mistake the jury rightfully charged to the master instead of the servant.

4. The next assignment is that the judgment is contrary to law. It is argued in support of this contention that the accident which caused Laughlin's death was one of the risks which he assumed by virtue of his employment; that the ordinary risks incident to constructing a tunnel is the caving in of the earth; that that was something which would probably happen, and that Laughlin was bound to know might happen; and that by continuing the work he

30

assumed the risk of injury to himself from such accident. In support of this contention counsel cite us to *Griffin v. Ohio & M. R. Co.*, 24 N. E. Rep. [Ind.], 888, in which it was held: "One who is employed to dig out gravel from under a thin stratum of clay cannot recover from his master for injuries received from the clay falling on him, since that is a danger incident to the business." Under the facts in that case we think it was correctly decided. Griffin was employed for the express purpose of digging out gravel overlaid with a thin stratum of clay. The master took no precautions whatever to support the clay after the gravel was removed. The danger of this clay falling was obvious and imminent to any man; and with this knowledge, without any protest or objection, or promise on the part of the master to provide a support for this clay, and without the master's taking any steps looking towards the building of supports for the clay, Griffin continued the excavation. By so doing he of course assumed the risk of the clay falling and injuring him. In *Missouri P. R. Co. v. Baxter*, 42 Neb., 793, the railway company employed Baxter to brake on one of its trains. He had previously been in the employ of another railroad company in the capacity of brakeman. At the time the Missouri Pacific Company employed Baxter it had taken no steps to block the frogs of its switches, nor did it take any such steps after employing Baxter, nor did it make him any promises that it would do so. Baxter was a full grown man and entered in the employ of the Missouri Pacific Company as brakeman and served it in that capacity for some months, passing twice per day on certain parts of its road on which the frogs of its switches were unblocked. He caught his foot in one of these frogs and was killed. It was held that since the danger of catching his foot in an unblocked frog was open, notorious, and obvious to him at the time he entered the service of the company and continued to be so all the time he was in its service, and that he continued in the service without pro-

test or objection or promise on the company's part to block its frogs, he must be deemed to have assumed that risk; and in said case it was held: "A servant, by his contract of employment, assumes the ordinary risks and dangers incident thereto. If the machinery, tools, or appliances furnished the servant by his master are obviously defective and dangerous, and the servant, notwithstanding, continues in the service, he thereby assumes the risks of any injury which he may sustain by reason of such defective appliances, unless he is induced to continue in such service by the promise of the master to remedy such defect." But the jury by its verdict has found that the supports for the roof of this tunnel furnished by the company were not reasonably safe and fit for the purposes for which they were designed; that the support did not afford Laughlin reasonable safety while executing with ordinary care the work of driving the tunnel; and the evidence supports this finding. Again, the evidence on behalf of the company, and especially that of its superintendent, is to the effect, not only that the support made in the tunnel was not obviously defective or imperfect, but that, in the opinion of the superintendent, it was amply sufficient and that it was skillfully and mechanically constructed. The rule then that a servant, by his contract of employment, assumes the ordinary risks and dangers incident thereto is not a defense to the company in this action. This rule can never be successfully invoked as a defense by a master unless he shows that the machinery, tools, or appliances furnished by him for the servant were reasonably safe and fit for the performance of the work in hand; and which the servant in the execution of his work, by the exercise of ordinary care on his part, might use with reasonable safety to himself; and that the appliances, machinery, or tools which caused the injury to the servant were, when used by the servant, obviously defective and dangerous. (*Sioux City & P. R. Co. v. Finlayson,* 16 Neb., 578; *Lee v. Smart,* 45 Neb., 318.)

5. Another assignment of error is that the damages awarded by the jury are excessive, appearing to have been given under the influence of passion and prejudice. We have failed to discover anything in this record that will support this assignment. The amount of the verdict is $2,000. The deceased was a strong, healthy man, capable of earning, and earning at the time of his death, about $10 per week. He was thirty-eight years of age, and left eight minor children and a widow wholly dependent upon him for support.

6. Another assignment is, "The court erred in admitting improper evidence on behalf of the plaintiff." The argument in the brief in support of this assignment is that the court erred in admitting the evidence of a witness named Mannix. We cannot review the assignment, for the reason that it is too indefinite. If a litigant is of the opinion that a court errs in admitting the evidence of any witness, he should object on the trial to the reception of the particular evidence, and specifically assign the ruling of the court in his petition in error here. Under an assignment that the court erred in admitting or rejecting evidence, this court cannot review anything. Under an assignment that the court erred in admitting the evidence of a named witness, if the record shows that any of the evidence of such witness was properly received, the assignment will be overruled.

7. The next assignment is that the court erred in giving upon its own motion the following instruction to the jury: "Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." This is the definition of negligence given by the court in *Blyth v. Birmingham Water-Works Co.*, 11 Exch. [Eng.], 784, and approved in *Smith v. London & S. W. R. Co.*, 5 C. P. [Eng.], 102. In *Baltimore & P. R. Co. v.*

*Jones,* 95 U. S., 439, the supreme court of the United States defines "negligence" as follows : "Negligence may consist in either failing to do what, under the circumstances, a reasonable and prudent man would ordinarily have done, or in doing what he would not have done." The definition given by the district court in this case, and complained of, is substantially, with the exception that it does not contain the phrase ",under the circumstances," the definition adopted by the highest court in this nation. The instruction of the district court was substantially correct; and even if we should be of the opinion that it was technically defective, we are still unable to say that the company was prejudiced by it.

8. The next assignment of error is that the court erred in giving instruction No. 7 of the instructions given by the court on its own motion. That instruction is as follows : "You are instructed that one who contracts to perform labor or render services for another takes upon himself those risks, and only such, as are usually incident to the employment engaged in; and the deceased in this case, when he engaged in digging the tunnel, assumed the ordinary risks and dangers only which are incident to such employment." We think this instruction correct in every respect.

9. The next assignment is that the court erred in giving on its own motion to the jury the following instruction : "Where the employer places one employe under the direction and control of another, and the latter, in the exercise of the authority so conferred, orders the former into a place of unusual danger, and thus exposes to extraordinary peril, of the existence and extent of which he is not advised, the employer would be liable in the event of injury to such employe." Counsel for the company admit that this instruction is correct as a proposition of law, but insists that there is no evidence upon which to base it. His contention is that Laughlin was not under the control or direction of any one while digging this tunnel. We have already

quoted the evidence, and we repeat that while the evidence does not disclose that any officer of the company ordered Laughlin to dig this tunnel, yet the evidence does show that he was in the employ of the company; that he did any kind of work that he was told to do; and that he was told by an officer of the company that when he was not busy at anything else that he might work in the tunnel. This was equivalent to a command to Laughlin that when not otherwise engaged he should put in his time in the tunnel; that he began the excavation of the tunnel with his foreman Cleary; that he was at work on the tunnel on the 8th of April when he was killed; that the superintendent of the company was there while he was at work; that he was neither ordered to desist, nor was any objection made by the company to his working at that particular work. In other words, the evidence is sufficient to show that Laughlin was excavating this tunnel in pursuance of his employment by the electric company, and that what he did in the tunnel he did under the advice and direction of the officers of the company. Under the facts and circumstances in evidence in the case the instruction complained of was correct.

10. The next assignment of error is that the court erred in giving to the jury instruction No. 10 of the instructions given on its own motion. The instruction is as follows: "You are to determine from all the facts and circumstances as shown by the evidence whether the deceased was exposed to unusual or extraordinary danger in digging the tunnel; and if you find that he was, this would be negligence on the defendant's part and the plaintiff could recover, unless you further believe that the deceased knew, or, in the exercise of ordinary care and prudence, might have known, that the danger was extraordinary or unusual, in which event a recovery could not be had." This instruction was erroneous. By it the court told the jury, in effect, that if Laughlin's presence in the tunnel, without his knowing it

or having opportunity of knowing it, exposed him to unusual danger, that that fact was negligence on the part of the company. It has been time and again decided by this court that it is for the presiding judge to say what acts or omissions are evidence of negligence, but that it is for the jury to say what conclusion such evidence warrants. The court might have properly told the jury that if Laughlin, by working in the tunnel at the time and in the manner and under the circumstances that he did, was thereby exposed to unusual or extraordinary danger, without knowing it and without opportunity to know it, that that fact was evidence of negligence on the part of the company; but it was not for the court to say that the fact rendered the company guilty of negligence, whether it did was for the jury. (See *Missouri P. R. Co. v. Baier*, 37 Neb., 235; *Omaha Street R. Co. v. Craig*, 39 Neb., 601; *Chicago, B. & Q. R. Co. v. Oleson*, 40 Neb., 889.)

11. The district court modified an instruction offered on the trial by the company and given by the court. The modification was as follows: "If the danger was unusual and not incident to the employment, and the employe had no knowledge of the unusual danger, and could not, with ordinary care and prudence, have discovered it, he would not be deemed to have consented to incur such unusual risk." To this modification counsel for the company took an exception; and the action of the court in thus modifying the instruction is the next assignment urged here. What we have already said in answer to the argument of counsel, that Laughlin, by working in the tunnel, assumed the risk of dangers incident thereto, must dispose of this assignment. We do not think the court erred in the modification complained of.

12. The next assignment is that the court erred in refusing to give the following instruction asked by the company: "If the negligence or carelessness of the deceased contributed directly to the injury which caused his death,

the plaintiff cannot recover, and your verdict should be for
the defendant." The court did not err in refusing to give
this instruction, for the reason that the court, at the request
of the company, had already instructed the jury as follows:
"The deceased, Daniel Laughlin, was bound to exercise or-
dinary care for his personal safety while engaged in the
excavation in question in this case; and if you believe from
the evidence that his negligence or carelessness, if any, con-
tributed directly to the injury which caused his death, then
you will find for the defendant."

13. The final assignment of error is that the court erred
in refusing to give to the jury an instruction in the follow-
ing language: "Fellow-servants are persons employed and
engaged in the same kind of work, for the same employer,
and one servant cannot recover from the employer for an
injury which resulted from the carelessness or neglect of a
fellow-servant; and if the witness Cleary, and the deceased,
in putting in the timber supports were doing so for the
electric company, and after putting in such supports worked
at the excavating, either together or separately, then you
are instructed that they were fellow-servants; and if the
caving of the earth resulted from the carelessness of either
or both of them, in not properly supporting the bank, then
the defendant would not be liable for the injury caused by
such caving." We think the court correctly refused to
give this instruction, for the reason that there was no evi-
dence upon which to base it. It is true that the support
put in the tunnel was put there by Cleary and Laughlin,
but there was no evidence that the caving in of the earth
which killed Laughlin resulted from the negligence of
either Cleary or Laughlin or both of them in not properly
supporting the tunnel. In other words, as already stated,
the evidence shows that Cleary was the foreman of
Laughlin; that they built the support in the tunnel of
the timbers of which the superintendent directed it to be
built; that Cleary and Laughlin constructed the support

under the general direction of the superintendent; that he was present at the time it was constructed, or soon after, and approved of the manner in which it was constructed; and had Cleary himself been killed by the caving in of this tunnel as was Laughlin, the material of which the support was constructed, the manner of its construction, and the fact that Cleary built the support, would, under the circumstances, have been no evidence of negligence on his part. Again, the question of fellow-servant was not in this case. If it be conceded that Cleary and Laughlin were fellow-servants while working in this tunnel and building the supports for it, still there is no evidence to show that Laughlin's death was the result of the negligence of Cleary in constructing the supports at the time and in the manner and of the material that he did.   If this material was improper or defective, if the support was insufficient, if it was not properly put up, the fault was that of the general superintendent under whose directions it was done.

For the error of the court in giving instruction No. 10 of the instructions given on his own motion, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.