CHRISTINA STOKES, Appellant, v. THE CITY OF SAC CITY, Iowa, Appellee.

Municipal corporations: PERSONAL INJURY: EVIDENCE: ERRONEOUS EXCLUSION: WAIVER. In this action for personal injury caused by the fright of plaintiff's horse at a show wagon standing upon the street, evidence that the horse was quiet; that it noticed the wagon and was frightened at the same; and as to whether plaintiff acquired any control over the horse, was admissible over the objection that the same was a conclusion of the witness. It was also competent to show that other horses were frightened at the same object. And the error in striking parts of such evidence was not waived, proper exception having been taken, by the statement of counsel that the same may go out, which was in effect an inquiry of the court regarding its ruling.

Same: NUISANCE: INSTRUCTIONS. An instruction in this action that the jury must find, to entitle plaintiff to recovery. that an exhibition of the show wagon upon defendant's streets was a nuisance, and that the burden was upon plaintiff to establish that fact, was erroneous, because failing to further instruct the jury as to the

meaning of the term nuisance, as that term has a special and particular meaning when applied to streets and highways.

**Same:** NEGLIGENCE: INSTRUCTION. Negligence consists not alone in careless action but also in careless omission to act, and the instruction that negligence is the doing of some act which an ordinarily prudent person under like circumstances would not do, was inadequate; especially as applied to the facts in this case, where the charge of negligence was predicated upon failure to act.

*Appeal from Sac District Court.*—HON. F. M. POWERS, Judge.

FRIDAY, APRIL 7, 1911.

ACTION at law to recover damages for personal injury. Verdict and judgment was returned for defendant, and plaintiff appeals. *Reversed.*

*Charles D. Goldsmith,* for appellant.

*Wm. A. Hart* and *W. A. Helsell,* for appellee.

WEAVER, J.—The plaintiff claims that while lawfully driving along one of the streets of the defendant city, and being in the exercise of due care on her own part, her horse became frightened by the sight and smell of a wild animal exhibition which defendant had negligently allowed upon said street, with the result that she was thrown from her carriage and severely injured. The defendant denies that it was in any manner negligent with respect to the matters complained of. The evidence tends to disclose facts as follows: It was circus day in Sac City. Following in the trail of the circus was the exhibition of an animal the nature of which is left in some doubt. Some witnesses speak of it as a wild hog, or wart hog, of extraordinary size, endowed with a heavy mane, a bushy tail, long tusks, a misshapen face, and a disagreeable odor. The fair in-

ference seems to be that it was a freak specimen of the porcine family, whose more exact scientific classification is not a matter of importance. It was loaded in a van or cage mounted on wheels. On the morning of the day in question the showman in charge drove the van to a position on the street at or near the corner of Fifth and Main streets, where it remained through the day. The team which hauled it was detached, the tongue of the vehicle removed, and the cage so arranged that persons paying for the privilege could enter and view the exhibit. Early in the day the mayor of the city visited the showman and suggested the advisability of his obtaining a license, but he replied that the main circus had been duly licensed, and that in other towns this had been construed as including a permit for the side shows and collateral exhibitions which clustered about it. This "bluff" appears to have satisfied the city's executive, as he collected no license fee, and the faker continued to do business at the same stand. The plaintiff resided in the country, and on the morning in question she, with her three little girls, drove to town in a single-seated carriage drawn by one horse. She described the horse as twenty years old, crippled, and quiet, one which she had often driven to town. In the afternoon, being ready to return to her home, she entered her carriage; two of her children occupying the seat with her and the third sitting on the carriage floor at her feet. Starting homeward she turned the corner at Fifth avenue and Main street, where the exhibition was located, and at or near the turn (the exact point being in dispute) the horse appeared to take fright, and the woman, evidently more or less distracted by her anxiety for the safety of her brood of little ones, was unable to hold the animal in check, and after running some distance she was thrown out. With this general outline of conceded or undisputed facts, we now proceed to consider questions raised by the appeal.

I.   Many of the trial court's rulings upon evidence

are challenged by the appellant.  It will be impracticable
to deal specifically with them all, and we mention only
those which seem to be of controlling im-
portance.  The question of fact over which
the parties seem to have most strenuously
contended was whether the plaintiff's horse
took fright at the exhibition at the corner
of Fifth and Main streets.  Concerning this and collateral
questions very much of the evidence offered by the plaintiff
was ruled out on the defendant's objection to its competency
and materiality.  For example, the plaintiff testifying as
a witness described the horse she was driving as being
"crippled and quiet."  The statement that he was quiet
was stricken out, as being the conclusion of the witness.
Again, she said that as she drove around the corner by the
show wagon the horse "noticed the wagon and shied and
jumped."  The statement that "the horse noticed the
wagon" was stricken for a similar reason.  Again, she
said the horse "took fright at the wagon," and the words
"at the wagon" were stricken.  Another witness, after
saying she saw the horse as it was running down the
street, was asked whether plaintiff "acquired any control
over it," and objection to the question as calling for a
conclusion was sustained.

Still another witness who had been at or near the ex-
hibition wagon on that day was asked whether he saw any
horses "become frightened" at it, and an objection to the
inquiry as incompetent and immaterial, unless it be con-
fined to plaintiff's horse, was sustained.  The testimony of
several other witnesses was offered, to the effect that they
saw and observed the wagon and its contents at its location
already described on the day of plaintiff's injury, and that
several different teams being driven along the street in
that vicinity became greatly frightened at the exhibition
and were held under control with much difficulty.  This
offer was in each instance rejected, the court saying, "It

1. MUNICIPAL
CORPORATIONS:
personal in-
jury: evidence:
erroneous
exclusion:
waiver.

is the court's theory that evidence of other horses being frightened is not competent." These rulings can not be sustained. The quiet character or habit of the horse was a material fact bearing on the question whether plaintiff was in the exercise of due care in driving it, and the defendant's objection thereto should have been overruled. Her statement that the horse noticed the wagon or took fright at the wagon was clearly admissible. While it partakes somewhat of conclusion, it is also a fact to which any intelligent observer may testify. The person driving the horse and observing its movements can speak with reasonable certainty of the fact of its fright, and ordinarily (with scarcely less certainty) of the cause. See *Schmidt v. Dubuque,* 136 Iowa, 402, and cases there cited.

It is argued by appellee that the error in this respect was waived by the plaintiff. This claim is made in reliance upon matters occurring at the trial, as here stated. Following the plaintiff's statement that "the horse noticed the wagon," the record shows the following: "Mr. Helsell: I move to strike out from her answer 'the horse noticed the wagon' as being a conclusion of the witness; as to what he did she has a right to say. The Court: I suppose that is true; that may go out. Mr. Goldsmith: The words 'the horse noticed the wagon' may go out? The Court: That may be stricken out of the answer, and the rest may stand. (Plaintiff excepts.)" This, appellee insists, indicates an acquiescence in the ruling. We do not so construe it. The remark by plaintiff's counsel seems to have been only by way of interrogatory to the court. This is indicated, not only by the interrogation point, but also by the fact that the court then repeats its ruling and plaintiff preserved an exception thereto. In any event, the error is repeated in so many rulings upon plaintiff's quite persistent effort to get the matters of this kind in evidence that we think its prejudicial effect was in no manner neutralized.

It must further be said that the rule applied to plain-

tiff's case by the trial court seems to have been overlooked in the admission of testimony for the defense. For example, a witness who was present at the time of the accident was permitted to state from his experience and from what he saw of plaintiff's horse at the time that it was not uncontrollable. Another was permitted to say that the horse "paid no attention whatever to the wagon," and that he "did not scare at this wagon or hog or anything else." The inconsistency of these rulings with those made in the earlier part of the trial is too radical for us to assume it had no prejudicial effect upon the minds of the jurors. Exceptions were also taken to the court's rulings upon the plaintiff's testimony as to her physical condition immediately after her injury and subsequent thereto. Several answers were stricken out which, we think, should have been permitted to stand, but the error was of incidental character and not so material that we would be inclined to reverse the judgment below on that ground alone.

II. We are of the opinion, also, that the court's charge to the jury is properly subject to several of the exceptions taken thereto. In the first place, the jury were frequently told that to justify a recovery for plaintiff they must first find that the wagon or exhibition complained of was a nuisance, and that the burden was upon the plaintiff to prove that it was a nuisance, but the charge nowhere defines or explains the meaning of the term. "Nuisance" in the general sense of the term is a word of quite broad and comprehensive signification. It has also what we may call a special or particular meaning in its application to public streets and highways, and to enable the jury to apply the general rules of law contained in the charge to the case in hand they should have been informed what facts, if found, would render the presence of this exhibition on the defendant's streets a nuisance.

*2. SAME: nuisance: instructions.*

Error is also assigned upon the definition of negligence

contained in the court's charge. It reads as follows: "Negligence is the doing of some act which an ordinarily prudent person under like circumstances would not do." The definition is inadequate. Negligence consists, not alone in careless action, but also in careless omission to act. *Mc-Caull v. Bruner,* 91 Iowa, 214; *Kearney v. Laughlin,* 45 Neb. 390 (63 N. W. 941); *State v. Railroad Co.,* 52 N. H. 549. The failure of the court in this connection to direct the attention of the jury to negligence which is predicable upon failure to act, where duty of action is shown, was especially prejudicial in this case because the defendant's negligence, if any, consisted solely in its failure to prevent or remove the alleged obstruction or nuisance from its streets. Plaintiff makes no claim, nor is there evidence, that the city had any active agency in the creation of the alleged nuisance, but her claim, briefly stated, is that "officers saw and knew, or ought to have known, of the existence of such nuisance and of its dangerous character, and negligently failed to cause its removal, and that by reason of such negligence she was injured. In view, therefore, of the issue made by the pleadings and the theory upon which the case was tried, we can not say that the error in this respect was negligible.

3. SAME: negligence: instruction.

As it is evident from what we have said that a new trial must be ordered, we deem it unnecessary to extend this opinion for the discussion of other matters argued by counsel. Many of the points not mentioned by us are controlled by our conclusions hereinbefore expressed, and others are not likely to arise on another hearing.

Of the merits of the controversy we have no opinion to express, except that from the record before us we find the plaintiff clearly entitled to a new trial, and the cause will be remanded to the district court for that purpose.

*Reversed.*