Argued June 18, decided June 25, rehearing denied August 13, 1912.

## BAINES *v.* MARSHFIELD & SUB. R. CO.

[124 Pac. 672.]

MUNICIPAL CORPORATIONS—STREETS—MAINTENANCE OF NUISANCE—RIGHTS OF ABUTTER.

1. That the value of property abutting upon a street has been diminished, and that free access thereto is prevented by the construction and operation of a private tramway in a street in such manner as to constitute a nuisance, shows a right in the abutting owner to sue for damages for an injury different from that suffered by the general public, and to enjoin further obstruction of his access.

MUNICIPAL CORPORATIONS—STREETS—ACCESS—INTERFERENCE—INJUNCTION.

2. Obstruction of an abutting owner's access to and from a street need not be continuous to entitle him to enjoin further obstruction; it being sufficient that the hindrance be only occasional, and for a few hours at a time.

EMINENT DOMAIN—RIGHT TO EXERCISE—PRIVATE TRAMWAYS.

3. A tramway maintained in connection with a sawmill for the hauling of lumber, etc., does not involve a public use for the construction, maintenance, or operation of which private property can be taken, though the owner may have adopted a schedule of freight charges, it appearing that the tramway does not unite with any other railway or form a part of any connecting line, and that, except in one instance, it has been used exclusively as a mere private enterprise.

MUNICIPAL CORPORATIONS—STREETS—NUISANCES.

4. A public street, when opened for travel, should be free, safe, and convenient, and any unlawful interference with either of these qualities of the highway for an unreasonable time creates a public nuisance, for which its author is rendered liable.

MUNICIPAL CORPORATIONS—STREETS—NUISANCES.

5. A railroad along a public street, built and maintained under competent authority, is not a nuisance if it is operated properly and carefully.

MUNICIPAL CORPORATIONS—STREETS—CONSTRUCTION OF RAILROADS—
        POWER OF COMMON COUNCIL.

6. Special Laws 1905, p. 214, Section 28, subd. 23, which authorizes the common council of the city of Marshfield to regulate the use of streets for street railways, etc., does not empower the common council to authorize the use of streets for the maintenance of a private tramway.

EMINENT DOMAIN—STREETS—PUBLIC USE.

7. Whether or not a proposed use of a street in the maintenance of a tramway is for a public purpose is a question of fact, to be determined by the court before whom the question is raised.

MUNICIPAL CORPORATIONS—STREETS—NUISANCES.

8. A nuisance constituted by operation of a private tramway in a street is not validated by continued use, and an abutting owner's power to prevent its further maintenance is not defeated by any delay in suing.

Nuisance as basis of recovery by abutter for injury to property from railroad in street, see note in 36 L. R. A. [N. S.] 756.    REPORTER.

From Coos:  JAMES W. HAMILTON, Judge.

This is a suit by James Baines against Marshfield & Suburban Railroad Company.

For appellant there was a brief and an oral argument by *Mr. John D. Goss.*

For respondent there was a brief and an oral argument by *Mr. W. U. Douglas.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the defendant, the Marshfield & Suburban Railroad Company, a corporation, from a decree enjoining it from operating cars on a public highway. The charter of Marshfield empowers the common council of that city as follows:

"To regulate the use of the streets * * for * * street railways." Special Laws, Or. 1905, p. 214, § 28, subd. 23.

"To permit, subject to the restrictions in this act contained, and regulate the laying down and maintaining of tracks for street cars and other railroads, and the operating of railways, locomotives, motors, and cars thereon." Special Laws, Or. 1905, p. 214, § 28, subd. 27.

The limitation thus referred to reads as follows:

"No franchise or right of way can or shall be granted by the city council to any person or corporation for using the streets or public highways of the City of Marshfield for the purpose of conducting, operating, or maintaining thereon any street railway, electric motor or horse-car line, or other railway, except upon the petition of the. owners of three-fourths of the property adjacent to and abutting upon any street, alley, or public highway through or upon which such right of way or franchise.is proposed to be granted." Special Laws, Or. 1905, p. 214, § 121.

Pursuant to a petition, purporting to have been signed by the requisite number of such owners, Ordinance No. 266 was enacted March 26, 1907, by the common council of Marshfield, granting to C. A. Smith, his heirs and assigns, the right to construct and maintain on certain streets of the city a narrow-gauge railway and to operate thereon cars for the transportation of lumber and other freight only, which vehicles were to be propelled "only by means of horse, or overhead or underground electrical power." All tracks to be constructed were not to exceed 30 inches in width, and the rails to be used were to be of such pattern, weight, and material, and placed on the streets designated at such places, as the common council might prescribe. If within 12 months from the passage of the ordinance Smith or his assigns should construct and operate on the west bank of Isthmus Slough at or near Marshfield a sawmill, the enactment should be in force and remain operative as long as lumber was manufactured at that place. It was provided, however, that a failure to operate the mill temporarily by reason of strikes or other unavoidable casualties should not forfeit the privilege so conferred. Within the time limited Smith and his assigns constructed at the place designated a sawmill. In order to transport the output of the mill

to a suitable shipping point there was constructed, pursuant to and in conformity with the ordinance, a railroad along Sheridan street, one of the highways specified, a distance of about 4,600 feet. This street, like others immediately east and west thereof, is laid out 80 feet in width across a marsh, the surface of which is occasionally overflowed at high tides. An elevated roadway 24 feet wide, and about 4 feet high, has been built along the middle of Sheridan street the distance mentioned. On the outer sides of the upper part of the raised way are short posts, on the top of which have been nailed a continuous railing and a wheel guard, except at street crossings and at openings where approaches to buildings have been made. The railroad authorized by the ordinance was built on the west side of the roadway, by spiking T-rails to the planks forming the decking, leaving, however, a space of 40 inches between the outer rail and the wheel guard. Beveled-edged planks, the thickness of which equals the height of the iron, have been nailed to the decking on the outside of it, but joining the rails, between which planks of the same thickness have been placed at street intersections and at approaches to buildings.

The right to the franchise granted to Smith has been duly assigned to the Marshfield & Suburban Railroad Company, which corporation operates on the railway mentioned cars used in transporting lumber and slab wood that has been cut into stove lengths. The cars employed for the latter purpose have racks into which the wood is thrown. The other vehicles used are open flat cars, and all are propelled by horses or mules. Cars loaded with wood have been allowed to stand on the tracks until the fuel was removed by persons to whom it was thus delivered,.and cars loaded with lumber have been permitted to remain on the railway, between street

Sig. 17

intersections, until suitable opportunity was afforded to continue the journey. The heavily loaded cars passing along the rails have caused the west side of the elevated roadway, the bents of which rest upon mudsills, constantly to settle, so that the east ends of the planks are about six or eight inches higher than the opposite extremities.

The general manager and the secretary of the Marshfield & Suburban Railroad Company on August 18, 1909, issued a local freight tariff for transportation of lumber, wood, and other freight between Anderson avenue, Marshfield, and Bunkerhill at the mill of the C. A. Smith Lumber & Manufacturing Company, the successor of C. A. Smith. This schedule was posted at each end of the tramway, and a copy of the rates thus established was submitted to the State Railroad Commission. The testimony shows that excepting some freight hauled for A. J. Savage the cars referred to are exclusively employed in transporting lumber and wood from the sawmill to a shipping point in Marshfield, and that the mill company owns 47 of the 50 shares of the capital stock of the railroad company.

1. It is contended by appellant's counsel that the evidence fails to show that plaintiff suffered any special damages, or sustained any injury in addition to, or different in kind from that endured by the public at large, and, such being the case, an error was committed in granting the relief bestowed. It is stated in the complaint and substantiated by the testimony that the value of plaintiff's property, abutting upon Sheridan street, was diminished, and that free access to his premises was prevented by the building and operating of the tramway. This depreciation was different in kind from that suffered by the general public, and would undoubtedly have been sufficient for the maintenance of an action to

recover damages occasioned by the nuisance. 2 Wood, Nui. (3 ed.) § 605. The mere decline in the worth of property, however, may not have been sufficient to warrant injunctive intervention. 2 Story, Eq. (10 ed.) § 925. In discussing the subject Judge STORY, in the section referred to, observes:

"It is not every case which will furnish a right of action against a party for a nuisance which will justify the interposition of courts of equity to redress the injury or to remove the annoyance. But there must be such an injury, as from its nature is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction."

2. The plaintiff's right of access to his property in Sheridan street has been occasionally interfered with by permitting cars to remain on the track in front of his premises. The tramway is built so near the west limit of the elevated roadway that it would be almost impossible, when the mill is being operated, for a team attached to a delivery wagon or other vehicle to be halted for any reasonable length of time in front of plaintiff's dwelling on that side of the street, without being disturbed by passing cars. This interruption must sometimes happen, and the recurrence is sufficient to authorize the maintenance of a suit in equity for injunctive relief; the rule being that the obstruction need not be continuous and uninterrupted, it being sufficient if the hindrance be only occasional and extended for a few hours at a time. Joyce, Nui. § 222.

3-7. Without attempting to discuss the many questions so ably presented by appellant's counsel, it is believed that the tramway complained of is not a public use for the construction, maintenance, or operation of which private property can be taken. A public street when opened for travel should be free, safe, and convenient

and any unlawful interference with either of these qualities of the highway for an unreasonable time creates a public nuisance for which its author is rendered liable. Joyce, Nui. § 214. A railroad built and maintained along a public street under competent authority is not a nuisance where it is operated in a proper and careful manner. Joyce, Nui. § 242. The common council of Marshfield were unauthorized to donate for an excessive interval the use of any particular part of a street, the right to which was admittedly in the community, except where the grant was made for a public purpose. Whether or not a proposed use is for such an object is a question of fact to be determined by the court. *Bridal Veil Lumbering Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790: 34 L. R. A. 368: 60 Am. St. Rep. 818).

In the case at bar the testimony fails to show that the appellant had any depot, warehouse, or facility for transacting a public business. Its track did not unite with any other railway or form a part of any connecting line. Except in one instance during several years, the tramway has been used exclusively for transporting lumber and slab wood for its stockholders. It is apparent that such a railroad, though its officers may have adopted a schedule of freight charges and declared it to be a corporation designed to subserve a public use, is a mere private enterprise. *Weidenfeld* v. *Sugar Run R. Co.* (C. C.) 48 Fed. 615; *Bradley* v. *Pharr,* 45 La. Ann. 426 (12 South. 618: 19 L. R. A. 647); *State* v. *Railway Co.,* 40 Ohio, St. 504.

8. From a careful examination of the testimony herein it is believed that the power of eminent domain could not have been exercised to secure the right which Ordinance No. 266 attempted to grant. The construction and operation of the tramway constitute a nuisance which was not validated by continued use, nor was the power

to prevent its further service defeated by any delay in instituting this suit.

Believing that equity has jurisdiction of the cause and that the injunction was properly issued, the decree is affirmed.                                                       AFFIRMED.