CLYDE R. GATES, appellant, v. CITY OF BLOOMFIELD et al., appellees.

No. 48023.

(Reported in 53 N.W.2d 279)

MAY 6, 1952.

W. R. Fimmen and D. W. Harris, both of Bloomfield, for appellant.

Buell McCash, city solicitor, of Bloomfield, and Wilbur R. Dull, of Ottumwa, for appellee City of Bloomfield.

OLIVER, J.—This action is a sequel to Gates v. City Council of Bloomfield, 243 Iowa 1, 50 N.W.2d 578. That was certiorari to the City Council to test the validity of certain ordinances. Except for some omissions, the facts stated in the petition at bar are substantially those shown in the trial of the certiorari case.

Plaintiff alleged he owned a property and building in Bloomfield in which was a hotel, restaurant and barbershop, with a west front of forty-three feet on Washington Street. Adjoining this on the south was a property twelve feet wide which also fronted west on Washington Street. It was leased for a bus depot which was operated by defendant bus lines. In 1950 the City Council enacted Ordinance 136, which was superseded in 1951 by Ordinance 143. Ordinance 136 established a bus-stop zone in the paved street, ten feet wide and along the entire forty-three-foot frontage of plaintiff's property and ten feet of the bus depot property, and provided: "It shall be unlawful for the operator of any vehicle, except operators of common-carrier buses engaged in interstate and/or intrastate business, to park such vehicle in said bus-stop zone and loading area, except in order to take on or discharge passengers or freight, and then only for such length of time as is necessary for such purposes." The ordinance provided for signs reading, "No Parking—Bus-Stop." Ordinance 143 was similar to Ordinance 136 with some changes in form and language which need not be considered in this appeal.

Upon the adoption of Ordinance 136, the city marked with yellow lines on the pavement, a zone, twenty-two feet wide and fifty-three feet long and erected the signs required by the ordinance which were set on heavy concrete bases placed in the street. Thereafter the large buses of both defendant bus lines commenced stopping for considerable periods of time to load and unload and to make connections with and transfer passengers and freight to other buses, and parking diagonally in the zone, in many instances continuously for more than one hour, with the front ends of the buses frequently projecting over the sidewalk to about two feet from plaintiff's building. Ingress and egress to and from the building to the sidewalk and to the street was impeded and blocked by the buses, passengers and piles of baggage. The property was deprived of parking space by the signs placed in the zone and at times was made untenantable by noxious

674

gases emitted by buses. Traffic on Washington Street was obstructed and was halted when buses were stopped in the zone.

The ordinances constituted an unlawful obstruction of the street and a hazard to the traveling public. The taking of the space in front of plaintiff's business and property was an unlawful appropriation of the street for private business and infringed upon plaintiff's rights in the street as an abutting owner. The establishment of bus zone, and the stopping, starting and parking of buses emitting noxious gases and obstructing the street and ingress and egress to the building constituted a nuisance; which the city maintained, acting in conjunction with defendant bus lines. Plaintiff pleaded some of the matters complained of damaged and rendered unprofitable the business of the hotel, restaurant and barbershop which had occupied his building. He prayed $10,000 damages.

Defendant City of Bloomfield filed a motion to dismiss the petition as against it; which the trial court sustained on the ground: "Because the enactment of the ordinances was within the governmental functions of the city, the defendant city was not liable for any damages sustained by plaintiff as a direct or indirect result thereof * * *." Plaintiff has appealed. In the consideration of such a motion, well pleaded, relevant and issuable facts are deemed true.

The certiorari case, Gates v. City Council of Bloomfield, supra, 243 Iowa 1, 8, 50 N.W.2d 578, held Ordinance 136, in effect, turned over to the bus companies a strip of the paved street abutting the entire forty-three-foot frontage of plaintiff's property, to be used as a passenger platform and freight loading dock by the interurban motorbuses. Otherwise stated, the ordinance was a grant to the bus companies of the use of the street to carry on their business. Both ordinances were held illegal and their adoption in excess of the proper jurisdiction of the city council.

In that case (page 7 of 243 Iowa) the trial court had found the bus companies "have been maintaining a nuisance in front of plaintiff's premises in violation of his rights as an abutter" and general nuisance statutes. The trial court attributed most of plaintiff's damage to the violation of the ordinance in that the buses would often remain in the zone, with the city's tacit

permission, much longer (an hour or two) than was necessary to discharge or take on passengers and freight. The decision of this court suggests the record showed these lengthy stops were to await the arrival of connecting buses and that it might be argued such stops were for the length of time necessary to take on or discharge passengers or freight, as permitted by the ordinance. In any event, the use of the zone made by the bus companies under the illegal ordinance was unlawful.

Section 657.1, Code of Iowa 1950, provides: "Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance." Among the nuisances listed in section 657.2 are the obstructing of public roads and the occasioning of noxious exhalations injurious to the health of people. Section 389.12 requires cities and towns to keep streets open and free from nuisances.

Real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights to access, light, air and view. Material interference with the rights of ingress and egress, etc., of owners of property abutting on streets and highways is a taking of the property of such owners. Liddick v. Council Bluffs, 232 Iowa 197, 5 N.W.2d 361; Anderlik v. Iowa State Highway Comm., 240 Iowa 919, 924, 38 N.W.2d 605. It is well settled that one who is specially injured by a public nuisance may maintain an action for damages by reason thereof, where his injury is distinct from that of the public. Ryan v. Emmetsburg, 232 Iowa 600, 603, 4 N.W.2d 435; 66 C. J. S., Nuisances, section 78, page 831.

Park v. C. & S. W. R. Co., 43 Iowa 636, 639, states: "Among the various injuries resulting from nuisances * * * those resulting from the obstruction of highways leading to the premises of the plaintiffs, and interfering with access thereto and causing other special damages, are held to be grounds of recovery in an action by the party injured."

Nor is it necessary that the obstruction of access be continuous to entitle the owner to relief. Baines v. Marshfield & Suburban R. Co., 62 Or. 510, 124 P. 672. That decision held the operation in a street of a private tramway wrongfully authorized

by city ordinance was a nuisance which would entitle an abutting property owner to damages.

Pugh v. Des Moines, 176 Iowa 593, 606, 156 N.W. 892, 896, L. R. A. 1917F 345, points out: "* * * a person cannot carry on his business in a public street in such a way as to obstruct the street, either by placing actual physical obstructions upon it, or even in such a way as to collect crowds upon the walk, or in front of his business, or so as to interfere with the public travel. If he does, he is chargeable as for nuisance."

■■ In the case at bar the trial court held the City was not liable for damages because the enactment of the ordinances was within its governmental functions. We have referred to the holding in the certiorari case that the ordinances were merely illegal grants to the interurban bus companies of the use of the street as a passenger platform and freight loading dock.

In Pettit v. Incorporated Town of Grand Junction, 119 Iowa 352, 358, 359, 93 N.W. 381, 383, the jail and other city buildings had been placed in the street. Plaintiff brought suit to abate the nuisance and for damages to his property which abutted the street. The decision states:

"A municipality has no more right to erect and maintain such an obstruction than a private individual possesses, and an action may be maintained against the corporation for damages occasioned by such a nuisance, for which it is responsible, in any case in which, under like circumstances, an action could have been maintained against an individual * * *.

"The contention that the erection and maintenance of the buildings was *ultra vires* is not well grounded. The defendant was authorized to erect them, and to choose a location. The streets were under its control."

Stanley v. Davenport, 54 Iowa 463, 468, 469, 2 N.W. 1064, 1068, 6 N.W. 706, 37 Am. Rep. 216, was an action against the city for injuries suffered by plaintiff when his horse took fright at a steam motor on a streetcar, the use of which by the streetcar company had been authorized by a resolution of the city council. The court held the city had no power to authorize such use and the granting of such authority or permission constituted negligence which would render the city liable for damages caused

thereby. "The city does not have the authority to sell and convey the title held by it or authorize the streets to be used for private purposes." In answer to a suggestion that the act of the city council being without authority, the city was not responsible for any consequences resulting therefrom, the decision states:

"The city had jurisdiction of the subject matter, that is, of the streets, and could only act in relation thereto through its council. The latter had control of the streets of the city, but were mistaken as to the extent of their authority. The particular thing the council authorized to be done was illegal, and we think the city is responsible for the consequences resulting therefrom."

The Stanley decision was followed by Stange v. Dubuque, 62 Iowa 303, 17 N.W. 518, which involved a city ordinance conferring upon a street railway company authority to construct upon certain streets, a street railway, and to operate it with steam or horse power. As in the case at bar, the city had no power to authorize the use of its streets for this purpose and the ordinance was illegal. Plaintiff's action was for damages to the value and use of his property which abutted the street, caused by the operation of the railway along the street. Judgment against the city was affirmed by this court.

In Stokes v. Sac City, 151 Iowa 10, 130 N.W. 786, plaintiff was injured when her horse took fright at a wild animal exhibition which the city had permitted upon a street. The jury was instructed that to justify a recovery they must find the exhibition was a nuisance and the city officers were negligent in failing to cause its removal. Plaintiff was granted a new trial on account of the failure to define the term "nuisance" or to direct the attention of the jury to negligence predicable upon failure to act.

In Nalon v. Sioux City, 216 Iowa 1041, 250 N.W. 166, substantial interference with access to property by changing a creek channel was held to constitute a taking of the property which entitled the owner to damages, although no part of the physical property was taken.

Ness v. Independent School District, 230 Iowa 771, 773, 298 N.W. 855, 856, held a school district which conducted a playground in such a manner as to constitute a private nuisance to an adjoining landowner was liable for damages therefor, stating:

"However, the rule in this state, and the majority rule, is that the immunity of a governmental agency from liability for negligence in the exercise of governmental functions does not exempt it from liability for a nuisance created and maintained by it."

The decision quotes from Fitzgerald v. Town of Sharon, 143 Iowa 730, 732, 121 N.W. 523, 524: "For the exercise of purely governmental functions a municipal corporation is not liable. * * * The creation and maintenance of a nuisance is very clearly not a governmental function, and the authorities are practically of one voice on the subject."

It quotes also from Hoffman v. City of Bristol, 113 Conn. 386, 389, 155 A. 499, 500, 75 A. L. R. 1191, 1193:

"Where a municipal corporation creates and maintains a nuisance it is liable for damages to any person suffering special injury therefrom, irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence. This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded from liability for negligence in the performance of such functions."

Counsel for the City contend the Ness case is in conflict with Abbott v. Des Moines, 230 Iowa 494, 298 N.W. 649, 138 A. L. R. 120. It is sufficient to say the Abbott decision held the facts alleged were insufficient to establish a nuisance. Mardis v. Des Moines, 240 Iowa 105, 34 N.W.2d 620, is not a nuisance case. Nor are the other decisions of this court which are cited by counsel for the City.

The text in 38 Am. Jur., Municipal Corporations, section 647, page 355, states "it has frequently been laid down as a broad, general rule that * * * an action lies against a municipality for injuries occasioned by a nuisance in any case in which * * * such an action could be maintained against a private corporation."

63 C. J. S., Municipal Corporations, section 770, page 66, states: "b. (1) In General. Where a municipal corporation creates, maintains, or permits a nuisance, it is liable for damages to any person suffering special injury therefrom, irrespec-

tive of negligence and notwithstanding the municipality is exercising governmental powers or functions * * *."

The motion to dismiss the petition was sustained on the ground the things done by the City were within its governmental functions. We hold that would not immunize the City from liability predicated upon nuisance. Hence, the order and judgment were erroneous.—Reversed.

All JUSTICES concur.