CONSUMERS' LIGNITE CO. v. HUBNER.

(Court of Civil Appeals of Texas. Dallas. Feb. 1, 1913. Rehearing Denied March 1, 1913.)

1. CONTINUANCE (§ 46*)—APPLICATION—DISCRETIONARY RULING.

It was within the sound discretion of the court to overrule a first application for a continuance, which failed to state that the applicant had used due diligence to procure the testimony of the absent witness.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 132–140; Dec. Dig. § 46.*]

2. CONTINUANCE (§ 47*) — ADMISSIONS IN CONTEST—EVIDENCE IN CONTRADICTION.

Where plaintiff, in his contest of an application for a continuance, made certain admissions, conditioned upon the application being found statutory, and the application did not in fact comply with the statute, the admission of evidence contradictory of such admissions was not error, though the trial court failed to state his reasons for denying the continuance.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 141; Dec. Dig. § 47.*]

3. CONTINUANCE (§ 35*)—GROUNDS—AVOIDANCE.

Where an application for continuance because of the absence of a material witness is otherwise sufficient, it should be granted, unless the facts expected to be proved by the witness, and as stated in the application, are admitted to be true.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 115; Dec. Dig. § 35.*]

4. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Where, in a mine employé's action for injuries due to a fall from the bottom flight of a stair, which he necessarily descended in entering the mine, after his light had been extinguished by being struck by some falling substance, the evidence was conflicting on whether such flight was protected by banisters, the question of whether defendant was negligent in maintaining a defective stairway was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1050; Dec. Dig. § 286.*]

5. APPEAL AND ERROR (§ 1002*)—VERDICT—CONFLICTING EVIDENCE.

A verdict for plaintiff on conflicting evidence could not be disturbed merely because defendant produced the greater number of witnesses, and their testimony was the more positive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

6. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.

Where a mine employé, prior to his injury, had made but one trip down the stairs at the entrance of the mine, and was then accompanied by two of defendant's employés, neither of whom called his attention to the fact that the bottom flight of the stairway was without banisters, and there was nothing to call his attention to such fact, he did not, as a matter of law, assume the risk of an injury due to his falling while reaching for the missing banister, after his light had been put out by some falling substance; a servant, on entering a master's employment, not being required to use ordinary care to see that the master's business is conducted in a reasonably safe manner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

7. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

That a mine employé, in ascending the stairway, assumes the risk of some substance falling from above does not, as a matter of law, result in his also assuming the risk of a defect in the stairway unknown to him, and as the result of which he falls to the bottom of the shaft, after his light is put out by the falling substance; the risks assumed being only such as pertain to defects known to him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

8. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—EVIDENCE—SAFE PLACE TO WORK.

Evidence, in a mine employé's action for injuries due to a defective stairway, that defendant's "mines were some of the best lignite mines in the state, as regards safety and efficiency of management," was properly excluded; it not being competent proof of the safety of the mine in question that it was as safe as other mines.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

9. APPEAL AND ERROR (§ 1058*)—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In a mine employé's action for injuries due to the lower flight of a stairway not being protected with banisters, the refusal to permit a witness to testify in regard to the safety and efficiency of the management of defendant's mines, if error, was harmless, where the same witness testified that the mine in question was

"constructed along the usual lines, provided with steps and banisters, with the exception of the lower flight of steps."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. § 1058.*]

10. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONSTRUCTION OF LAW.

In a mine employé's action for injuries, testimony that, in the witness' opinion, the mine was being operated in compliance with state mining laws was properly excluded, since it involved a construction of the mining laws.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

11. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSION OF WITNESS.

In a mine employé's action for injuries, testimony that, in the witness' opinion, the entries and driveways to the mine were in a safe condition, being a conclusion of the witness, was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

12. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—INSTRUCTION.

In a mine employé's action for injuries due to a defective stairway, an instruction that the master "must use ordinary care to furnish the servant a reasonably safe method of ingress to his mine" was not misleading in the use of the word "method," particularly where he also instructed that plaintiff could not recover if the stairway was not defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

13. MASTER AND SERVANT (§ 295*)—INJURY TO SERVANT—INSTRUCTION.

An instruction, in a mine employé's action for injuries due to a defective stair in the manway, that plaintiff assumed the risk of injury, if the accident was one ordinarily incident to the business of sending men into the mine through the manway, was not misleading in the use of the word "accident."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

14. TRIAL (§ 133*)—ARGUMENT OF COUNSEL—CURE OF ERROR.

Improper argument of counsel, in a mine employé's action for injuries, in stating, "We have only brought this suit for $1,999.99, although we are entitled to more, because the defendant is a foreign corporation, and if we sued for more than this the defendant would move its case from this court," was cured, where the court checked counsel and orally instructed the jury not to consider such argument, and defendant did not request any written instruction on the matter.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by William Hubner against the Consumers' Lignite Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The court instructed: "If you find that the accident which happened to plaintiff was one ordinarily incident to the business of sending men into the mine through the manway, then he assumed the risk of injury."

Plaintiff's counsel, in his argument to the jury, said: "We have only brought this suit for $1,999.99, although we know we are entitled to more, because the defendant is a foreign corporation, and if we sued for more than this the defendant would move the case from this court."

Walter F. Seay, of Dallas, and Harris, Suiter & Britton, of Quitman, for appellant. Bozeman & Campbell, of Alba, for appellee.

RASBURY, J. Appellee sued appellant in the district court of Wood county for damages for alleged personal injuries received by appellee while in the service of appellant as a miner at appellant's mines in Wood county. The specific acts of negligence alleged to have been the cause of appellee's injuries will develop upon consideration of the several assignments of error. There was trial by jury, and verdict and judgment for appellee.

[1] The first assignment of error complains of the action of the district court in overruling appellant's application for a continuance. The application was a first one and in statutory form, with the exception hereinafter noted. The continuance was sought because of the absence of Dr. R. A. Farrington, witness for appellant, who was shown to be confined to his bed, at his residence in Wood county, with typhus fever. Appellant expected to prove by said witness, who is a physician, that he saw appellee at the place of accident about one hour after his alleged injuries, at which time he was suffering from a bruised condition of the head, breast, stomach, and left hip, and considerable pain from the shock; that, in his opinion as a physician, there were no internal injuries and no bones broken; that he estimated appellee would be unable to work for a period of one week; that at the examination of appellee immediately after the accident his pulse and respiration were normal, and for that reason he did not believe appellee was unconscious or suffering serious injury; that witness continued treatment of appellee until there was no further evidence of injury of any kind, the treatment covering a period of possibly one month; that witness would also testify that at the time of the accident there was no evidence of rupture, and, in his opinion, there was no rupture; that subsequently, and over his protest, a truss was placed upon appellee, which, if worn as once seen by the witness, was calculated to injure the parts where applied; that witness was attending appellee in substitution for Dr. McKnight, the surgeon of appellant, who was absent at the time of appellee's injuries, and who, on his return, four or five days after, consulted with witness about the case, but that witness continued in charge of the patient. The application was sworn to, and had attached to it the certificate of Dr. W. H. Smith that Farrington had been confined to his bed for 12 days with typhus fever,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and would continue to be so confined for a period of six or eight days longer, and for that reason was unable to attend court, and would be unable to so attend for three weeks. As we have said, the application was in all respects statutory, save and except it failed to recite that appellant "has used due diligence to procure such testimony," but did state that the witness resided in Alba, Wood county, and had so resided for some time, and that 'on November 4, 1911, before the call of the case for trial on November 15, 1911, appellant procured the issuance of a subpœna directed to said witness, and placed same with the sheriff for service; and counsel agreed in open court that, while process had been issued, it had not been served, for the reason that the witness was too ill, and it would have been dangerous to his health for the officer to have attempted to serve him.

The trial court permitted appellee to contest the application for continuance, the grounds of contest being, in substance: That it did not show service of subpœna on the witness, or diligence to serve same. That the testimony of the witness was immaterial, unnecessary, and not probably true, for the reason that there was in attendance upon court a competent trained nurse, who was in attendance upon appellee during the time said Farrington treated appellee, who could testify as to the condition of appellee better than said Farrington. That, in event the application does show materiality and diligence, and is in compliance with statute, then appellee admits to be true: (a) That Dr. Farrington visited plaintiff about one hour, or such time, at the place of the accident to plaintiff, at the defendant's request, and found him suffering with bruised condition of head, breast, stomach, and left hip, and found him suffering considerable pain from the shock. (b) That at the time of said visit it was his opinion as a physician that there were no internal injuries and no bones broken. (c) That at the time of the accident said Farrington estimated that plaintiff would be unable to work for a period of one week, and that at the time of the accident there was, in his opinion, no evidence of any rupture to plaintiff, and, in his opinion, that there was no rupture.

Attached to the contest was the affidavit of the witness Farrington, on account of whose absence the continuance was sought, in which he stated that the appellee, immediately after his injury, seemed to be suffering considerable pain, and during the four or five days he treated appellee he complained of soreness and pain in his left hip and along the right inguinal canal, and that he discovered no rupture. The contest also, in effect, denied that Farrington would testify to the facts set out in the application for continuance. The application for continuance and the contest standing as we have shown, the court overruled the application for continuance and compelled the appellant to go to trial. The bill of exceptions taken by appellant to the action of the court in overruling the application is entirely silent as to why the same was overruled. Appellee takes the position, in effect, that it is our duty to sustain the action of the trial court in overruling the application on any ground that it may be done, and in that connection urges that, the application failing to recite that the appellant "had used due diligence to procure such testimony," meaning the testimony of Farrington, the application was not statutory, and was hence properly overruled. This seems to be the rule adopted by the Supreme Court. That court, on the question, says: "The statute requires that on the first application for a continuance the party applying therefor shall make affidavit, among other things, that he has used due diligence to procure the testimony of absent witnesses, stating the diligence used. It is *not sufficient to state the diligence without also stating that it was due or sufficient diligence.* The party may be able to state that statutory diligence was used, and yet, as in this case, refuse to swear that it was sufficient. Facts may exist within the knowledge of the affiant that would restrain him from making oath that due diligence had been used, when he could promptly swear that the ordinary statutory diligence had been used. The failure and refusal of the attorney to make the statutory oath left the matter of continuance to the sound discretion of the court." Railway Co. v. Woolum, 84 Tex. 573, 19 S. W. 783; Hogan v. Railway Co., 88 Tex. 684, 32 S. W. 1035; Brown v. National Bank, 70 Tex. 750, 8 S. W. 599.

Under these decisions it will be seen that the omission of the statutory words indicated at another place left the matter to the sound discretion of the court, and following the rule there announced we hold there was no error in overruling the motion to continue.

[2, 3] Growing out of the action of the court in overruling the application to continue, another question arises which, we confess, has been the source of some uncertainty on our part. The appellee, in his contest of appellant's application to continue, as an inducement to secure the denial of the application, admitted that certain facts which Dr. Farrington would testify to were true, and that, in his opinion, certain other facts were also true. After the application was denied, and upon trial, appellee, with the consent of the trial judge, and over objections of appellant, was permitted, substantially, to contradict the admissions made in the contest. This action of the trial court is challenged by appellant under its third, fourth, and fifth assignments of error. The rule is well settled that, where an application for continuance because of the absence

of a material witness is otherwise sufficient, it should be granted, unless the facts expected to be proved by the witness, and as stated in the application, are admitted to be true. Horwitz v. La Roche, 107 S. W. 1148; Maughmer v. Behring, 19 Tex. Civ. App. 299, 46 S. W. 917; Railway Co. v. Hall, 92 S. W. 1079; Railway Co. v. Lynes, 65 S. W. 1119. In none of the cases cited, however, has the further question of the statutory sufficiency of the application been involved, and for that reason, and because the record fails to show on what ground the application was in fact denied, a different question, it seems, is involved, particularly so since the contest makes the admission of the truth of the proposed testimony of Farrington depend upon whether or not the same "shows materiality and diligence and compliance with the statute." If the record disclosed that the application for continuance was denied solely because appellee had admitted the truth of the allegations in the application, then it would be clearly erroneous, under the cases cited, to permit same to be contradicted. But when it appears that the application was not a statutory one, and the admission was made only on condition that it was statutory, and the record fails to show on which of the two grounds the court acted, then, in view of the decisions just cited in reference to the importance of a statutory application for continuance, necessarily the presumption arises that it was based upon the theory that the application was not in compliance with law. Of course, if no objection had been taken to the sufficiency of the application at the time, and the admission made without knowledge of the statutory omission noted herein, it would work a decided injustice, and would be corrected when presented in such form as would permit the correction.

[4] The second assignment of error is, in effect, that the testimony in the case is insufficient to show any negligence by appellant, and hence the verdict is not supported by the evidence. Appellee was employed by appellant as a miner in its coal mine, and was injured the second day of his employment. The place where the miners worked was underground a distance of about 70 feet. A perpendicular shaft was dug down to the strata of coal where the miners worked, and into this shaft was built a winding stairway, down which the miners entered the shaft and reached the strata of coal which was being mined. Appellee alleged that on the morning he was injured he commenced descending said stairway into the mine, and just as he was within about 20 feet of the bottom, and about ready to start down the last flight of stairs, a piece of timber, coal, or other substance fell from above, striking him on the head and knocking off his cap and lamp, extinguishing the light and leaving him in utter darkness; that he then stepped to go on down the stairs, or to get out of the way of any other substance that might fall or be falling, when suddenly he fell to the bottom of the shaft, striking an iron pipe with great force, and injuring himself as detailed in the pleading. The claim was made that appellant was negligent in maintaining a defective manway and stairway, in that the manway was out of repair, caving and falling in, its timbers old and rotten; that the stairway, which was constructed in sections of seven or eight feet, had handholds or banisters to use in descending and ascending, except the last flight, which was about 20 feet in length, steeper than an ordinary and reasonably safe stairway should be, and which had no banister or handhold, or, if any, an insufficient one. The claim is made by appellant, and we agree with it, that if any negligence was proven it was in the condition of the last flight of the stairway leading down the manway. Hence, bearing on the condition of the last flight of steps, and appellant's claim that there was no testimony showing same was negligently constructed, the following testimony was adduced:

Appellee testified that he did not "know whether there were any banisters there or not; that he grabbed for them, but could not grab any, but did not remember whether there was any there or not."

Gannott testified: "There were no banisters on the last flight; there were on the other flights."

Patton testified: "The bottom flight of the stairway is different from the rest of the flights of the stairs; that is, it is longer and steeper. * * * I don't know at the present whether or not the bottom flight has got banisters on it. It seems to me that it did not have banisters when I was there. It might have had, but I don't remember; I don't believe that it did."

Hodge testified: "The last flight of steps is some steeper than the others. * * * I don't believe there are any banisters the last three feet down the steps."

Mitch Terry, referring to the stairway, testified: "Not all of them have got banisters or handholds on them; I don't think the last flight has got banisters or handholds on it. I would not be positive, because it has been a good while; (but) my best recollection is that there was not any."

Clarence Patton testified: "The bottom or last flight of steps or stairs never had any banister on it. * * * I don't know that I could tell the jury that there was a point on those stairsteps where a man could fall 15 feet because there is not any banister on it; I don't know about that. * * * But I do swear absolutely that on the last flight of steps there were no banisters. That is my best recollection. I stepped off there one time is how come me to know so."

Broman, state mine inspector, testified that the stairway "is constructed along the usual lines, provided with steps and banisters, with

the exception of the lower flight of steps. I do not remember the details of the construction; but they were provided with banisters, I believe, with the exception of the lower flight."

[5] It was the duty of appellant to use reasonable precaution for appellee's safety by providing him a reasonably safe and convenient means of ingress and egress to and from appellant's mines, and failing to do so appellant would be liable for any injury proximately resulting from such failure. The only means of ingress and egress to said mines for appellant's employés was the stairway down which appellee was making his way when the substance struck him, knocking his cap from his head and extinguishing his lamp, although it is hinted in the record that there was another. When his light was extinguished, he was beginning the descent of the last flight of stairs. As his light was extinguished, and he was left in darkness, he stumbled and reached or "grabbed" for the banisters, and claims he found none, and that as a result he finally lost his balance and fell to the bottom of the shaft, and was injured, as alleged. Under the allegations of the petition, and in view of appellant's duty to provide a safe place of ingress for appellee, the testimony was sufficient, in our opinion, to take the issue of the condition of the stairway to the jury for their determination. While it may be true that the testimony of appellant's witnesses, asserting there were banisters on the last flight of steps, and that same were safely and properly constructed, is much more positive than the testimony of appellee to the contrary, and it may also be true that appellant's witnesses outnumber appellee's, yet such facts give us no right of interference, and present no excuse for denying the jury the right to determine the issue.

Mr. Chief Justice Gaines, in Harpold v. Moss, 101 Tex. 540, 109 S. W. 928, says: "To judge of the credibility of the witnesses and the weight to be given to their testimony is peculiarly the province of the jury. Hence, whenever the court undertakes to say that the testimony of a witness is entitled to no credit, because it is overborne by contradictory testimony, or that it is so contrary to circumstances in proof, which render it improbable, it very clearly assumes the function of the jury; and its ruling should not be permitted to stand." See, also, Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323, which is in point.

[6] The eighteenth assignment of error complains of the refusal of the court to peremptorily instruct the jury to return a verdict for the defendant. The first claim urged under this assignment is that appellee's injuries resulted from risks assumed by him. The assumption of the risk is sought to be fastened upon appellee, for the reason that he had, on the day previous to his injuries, made a trip down into the shaft, and knew

that the last flight of the stairs was steep and without banisters, and for the further reason that such condition was so open, patent, and obvious, appellee is held, as matter of law, to have assumed the risk. The effect of this proposition is to say that, if it be conceded that the stairway was negligently or defectively constructed, or was in a dangerous condition, nevertheless appellee knew of and appreciated his danger, since he had descended into the mine the day before, and had passed down the steps, and since their condition was so open, obvious, and patent that the law charges him with notice thereof. This reduces the inquiry under this assignment to the single question of whether or not the testimony was sufficient to take the question of assumed risk to the jury, or whether, as maintained by appellant, the undisputed facts show, as matter of law, that appellee assumed the dangers of descending the stairway. The jury adopted appellee's theory of the facts surrounding the accident; and in deference to such findings, and as bearing on appellee's knowledge of the condition of the stairway, the record discloses that on the morning before appellee began his duties he was escorted down into the mine by two other miners, one preceding him and one following him, all three having a lamp in their caps, the purpose being obviously to show appellee the way down the shaft, although he says no one explained to him the purpose of escorting him down, and that he asked if there was any one present who could speak German, appellee being German, and, as we gather from the record, speaking English indifferently, but was told no one could speak German. On reaching the bottom of the shaft he was turned over to a 17 year old boy, who conducted him to his room, where he worked that day, leaving the mine, as we understand, by the "slope" through which the cars loaded with coal were hoisted, and not by the shaft down which he was escorted. On entering the mine the first day, he did not notice the manner in which the last flight of steps were constructed, nor was there any occasion for him to do so; nor did those who accompanied him call his attention thereto. No stop was made on the journey down, and the only light in the shaft was that shed by the miners' lights on their caps. The foregoing is, in effect, the testimony bearing on appellee's knowledge of the defective condition of the stairway. Are the facts sufficient to take the question of assumed risk to the jury? We think so, for the reason that when the servant enters the employment of the master he is not required to use ordinary care to see that the master's business is conducted in a reasonably safe manner. "He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or in the ordinary discharge of his

own duty must necessarily have acquired the knowledge." Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508; Texas Trac. Co. v. Morrow, 145 S. W. 1071.

As we have said, the assignment we are considering, which attacks the refusal of the trial judge to peremptorily return a verdict for the appellant, concedes, at least for the presentation of the point under discussion, the defective condition of the stairway. Then can it be further said that appellee, under the facts adduced, knew its condition and attendant risks, or in the discharge of his duties must necessarily have known its condition? We think not. Appellee had made but one trip down the shaft before the accident happened, and did so then preceded and followed by two of appellant's employés, neither of whom called his attention to the condition of the stairway. While an experienced miner, this fact did not, as contended by appellant, require him to examine for himself and ascertain the situation. His very experience, perhaps, told him to assume that the stairway was a reasonably safe one, although he is not required to use ordinary care to ascertain that fact. It was the master's duty to exercise that degree of care, and not the servant's. Appellee says it was dark, and that he did not notice the defect. At all events, the evidence on the point of assumed risk was sufficient to take the question to the jury for their determination, and it follows that, in our opinion, the peremptory charge was properly refused.

[7] The fourth and fifth propositions under the eighth assignment of error depend for their force upon the proposition that the proven facts constitute, in law, assumed risk on the part of appellee of the defective stairway, but which we have determined was properly submitted to the jury; and hence it would have been improper for the court to have peremptorily directed a verdict for appellant, as urged in said propositions. We deem it proper, however, in response to appellant's argument that the substance which fell down the shaft and knocked appellee's cap and light from his head, thereby placing him in a position of sudden peril and fright, was the proximate cause of his injury, and that appellee, because he knew the shaft was open, and the probability of some substance falling being obvious, assumed the risk, and was not, as matter of law, entitled to recover, to say that, in our opinion, the correct rule, under the facts in this case, was stated by Mr. Chief Justice Gaines in Railway Co. v. Somers, 78 Tex. 442, 14 S. W. 780, where it is said: "Because a servant knows of one defect, he does not take the risk of another, of which he has no knowledge; and if both contribute to injure him he is entitled to recover, provided but for the unknown defect the accident would not have happened. It is not a question of contributory negligence, for the law does not impute negligence to him for knowingly using defective implements or machinery. He merely assumes the risk of such defects as are known to him."

Hence, if it can be said that appellee assumed the risk of some substance falling down the open shaft and knocking his light and cap from his head and placing him in sudden fright and peril, under the evidence and finding of the jury, he did not assume the risk of the defective stairway, since he did not know it, and which defective condition, under the above rule, was in fact the proximate cause of the injury. The rule is also very clearly and concisely stated by Mr. Justice Fly, in Shippers' Compress & Warehouse Co. v. Davidson et al., 35 Tex. Civ. App. 558, 80 S. W. 1032.

[8, 9] The ninth, tenth, eleventh, and twelfth assignments of error and the propositions thereunder relate to the refusal of the court to permit appellant to prove certain facts by Isadore J. Broman, state mine inspector. The first complaint is that the court refused to permit appellant to prove by said witness that "these mines were some of the best lignite mines in the state, as regards safety and efficiency of management." We think the statement properly excluded. An analysis of the statement shows, not that this mine was safely constructed and managed, but that, as compared to other similar mines, it was safely and efficiently managed. We do not believe it a safe rule to prove a thing safe because it is as safe as any other like thing. Besides, this statement was rendered inadmissible, or, at least, its exclusion harmless, in view of the fact that Broman testified that the mine was "constructed along the usual lines, provided with steps and banisters, with the exception of the lower flight of steps," being the steps claimed to be defective.

[10, 11] The other complaints are directed to the refusal of the court to permit said witness to state that, in his opinion, the mine was in good condition and operating, as near as the witness could determine, in compliance with state mining laws, and that the entries and driveways thereto were in safe condition. We think any statement of the witness that the mines were constructed according to the state mining laws, was inadmissible, because it involved a construction of the mining laws, which was the function of the court. We also think the opinion of the witness that the mine's entries and driveways were in safe condition was a conclusion of the witness, and that the proper method would have been for the witness to state the manner of construction and leave it for the jury to determine whether it was properly and safely constructed. Anderson Elec. Co. v. Cleburne W., I. & L. Co., 23 Tex. Civ. App. 328, 57 S. W. 580, and cases cited. The case of Stark Grain Co. v. Harry Bros., 57 Tex. Civ. App. 529, 122 S. W. 950, is entirely dissimilar in its facts

from the instant case. Mr. Justice Talbot, in that case, draws the distinction between the application of the rule of evidence in the Anderson and Stark Cases, supra, and we content ourselves with a reference to his opinion. Finally, as we have stated in another portion of this opinion, this witness testified that the stairway upon which appellee received his injuries was not properly constructed, and the charge of the court confined the jury in its deliberations to the negligence of the appellant in the construction of said stairway.

[12] Under its twenty-second assignment of error appellant asserts that the court erred in telling the jury that the master "must use ordinary care to furnish the servant a reasonably safe *method* of ingress to his mine"; whereas the pleading of appellee only charged that the place of entry was improperly constructed and maintained. The complaint is that the jury was misled by the use of the word "method." This objection appears to us hypercritical, particularly in view of the fact that the charge told the jury directly that appellee could only recover if the last flight of stairs were defectively constructed, which took from the jury all other specific charges of negligence; and it is hardly conceivable that under said charge they considered or that the method of entry into the mine had any influence upon them in reaching their verdict.

[13] What we have said above in reference to the use of the word "method" applies to the use of the word "accident," employed in two or three instances by the court in charging on the risks of his employment assumed by the appellee. The charge upon assumed risk was properly given, but was prefaced by the statement that, if the jury believed that the "accident" to appellee was one ordinarily incident to the business, then appellee assumed such risk; whereas appellant maintains the correct rule to be that the servant assumes the risks ordinarily incident to his employment, and it is not the duty of appellee to show that the "accident" to the servant was one of the risks of his employment. As we have suggested, we cannot in all fairness conceive how the occasional use of the term "accident" could have possibly misled the jury.

[14] We do not feel that we can sustain the twenty-fifth assignment of error, which complains of the improper argument of counsel for appellee, in view of the qualification of the bill of exception by the trial court, wherein he states that he checked counsel and orally instructed the jury not to consider same, and that appellant did not request any written instruction on the matter. We do not, however, wish to be understood as at all approving same. Such arguments are improper, and we will not hesitate to hold same materially erroneous, when not qualified as in this case.

The balance of the assignments of error, which are not repetitions of those heretofore examined by us, have been carefully considered, and we are of opinion that they present no material error; and hence it becomes our duty to overrule same.

The judgment of the lower court is affirmed.