HODGES et al. v. SWASTIKA OIL CO. (No. 7136.)

(Court of Civil Appeals of Texas. Galveston. March 2, 1916. Rehearing Denied March 30, 1916. Second Motion for Rehearing Denied April 20, 1916.)

1. MASTER AND SERVANT ☞276(3)—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE— PLACE TO WORK.

In an action for the death of an employé who fell from an oil well derrick, evidence *held* not sufficient to show actionable negligence in the construction of the finger board of the derrick, or that the construction was the proximate cause of the fall.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ☞ 276(3).]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. MASTER AND SERVANT ⚖️286(18) — INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE —NEGLIGENCE—SAFETY APPLIANCE.

In an action for the death of an employé who fell from an oil well derrick, evidence *held* sufficient to take to the jury the question of the employer's negligence in failing to furnish a safety belt to the employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1025; Dec. Dig. ⚖️ 286(18).]

3. MASTER AND SERVANT ⚖️228(1)—NEGLIGENCE ⚖️116—INJURIES TO SERVANT—DEFENSES—CONTRIBUTORY NEGLIGENCE—STATUTE.

An employer can plead contributory negligence as a defense to an action for the death of his employé whether the action is governed by the Employers' Liability Act (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), allowing the defense in diminution of damages, or not, in which case it is an absolute defense.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 670; Dec. Dig. ⚖️ 228(1); Negligence, Cent. Dig. § 194; Dec. Dig. ⚖️116.]

4. MASTER AND SERVANT ⚖️270(10)—INJURIES TO SERVANT — ADMISSIBILITY OF EVIDENCE—SAFE PLACE TO WORK.

In an action for the death of a derrick man, a question asked witness who had testified as to the weather conditions on that day whether that weather would make the place to work unsafe was objectionable as calling for evidence as to the absolute safety of the place, not its reasonable safety, which was the measure of the employer's duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 920; Dec. Dig. ⚖️ 270(10).]

5. EVIDENCE ⚖️472(4)—OPINION EVIDENCE—QUESTION IN ISSUE.

The question was also objectionable as calling for the witness' conclusion as to a fact which it was the province of the jury to determine.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2189; Dec. Dig. ⚖️472(4).]

6. APPEAL AND ERROR ⚖️742(1) — ASSIGNMENT OF ERROR—STATEMENT.

An assignment of error not followed by a statement as required by the rules cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⚖️742(1).]

7. MASTER AND SERVANT ⚖️351—WORKMEN'S COMPENSATION ACT — CONSTRUCTION — ASSUMING RISK.

Employers' Liability Act, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h), provides that in an action to recover damages for an employé's injuries or death it shall not be a defense that the employé had assumed the risk of the injury incident to his employment. Section 2 of the act (article 5246hh) provides that it shall not apply to actions to recover damages for injuries or death of employés of any employer having in his employ not more than five employés. The fourth section of the act provides that employés whose employers are not at the time of the injury subscribers to the insurance association cannot participate in the benefits of the association, but can recover for damages by reason of injury received in the course of employment, and that the provisions of section 1 of the act should be applied in all such actions. *Held*, that the exemptions in section 2 should control the general words in section 4 (article 5246ii), so that employés of all nonsubscribing employers might recover against their employ-

ers, but that the provisions of section 1 as to the defenses including assumption of risk should be applied in such cases only where the employers had more than five employés.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⚖️351.]

8. STATUTES ⚖️206 — CONSTRUCTION AS A WHOLE.

All the parts of a statute are to be considered together in construing it, and one part may control another, though, if possible, they are to be reconciled.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 283; Dec. Dig. ⚖️206.]

9. STATUTES ⚖️194—CONSTRUCTION—PARTICULAR AND GENERAL PROVISIONS.

Where there are words in a statute expressing a general intention and others expressing a particular intention incompatible with it, the particular must be taken as an exception to the general.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig. ⚖️194.]

Appeal from District Court, Matagorda County; Samuel J. Styles, Judge.

Action by I. A. Hodges and others against the Swastika Oil Company. Judgment for the defendant on directed verdict, and plaintiffs appeal. Reversed and remanded.

Gaines & Corbett, of Bay City, for appellants. Hunt, Myer & Townes and Rodman S. Cosby, all of Houston, and J. W. Conger, of Bay City, for appellee.

McMEANS, J. Will Hodges, while in the employment of the Swastika Oil Company, a private corporation, fell from the triple board of an oil well derrick upon which he was at work, and thereby received injuries which resulted in his death, and I. A. Hodges, S. E. Hodges, and Dewey Hodges, the father, mother, and minor brother, respectively, of the deceased, brought this suit to recover of the oil company damages accruing to them by reason of his death. Recovery is predicated upon the alleged negligence of the oil company, as the proximate cause of the death of said Will Hodges, in the following particulars: (1) Faulty or defective construction of the finger-board upon which the deceased was required to stand while at work, in that the same was slanting, being about 6 inches lower at the end extending into the derrick than the end attached to the derrick girder, which caused the deceased to slip and fall. (2) In requiring the deceased to work in the derrick when the weather was unusually bad and rainy. (3) In failing to furnish the deceased with a safety belt, which they alleged would have prevented deceased from falling in case of his foot slipping while working upon the triple board.

The defendant answered by general denial and special pleas of assumed risk and contributory negligence on the part of the deceased. The case was tried before a jury, who, in obedience to a peremptory charge of the court, returned a verdict for defendant, and a judgment was thereupon accordingly enter-

ed in defendant's favor, and the plaintiffs have appealed.

By appropriate assignments of error appellants assail the action of the court in peremptorily instructing a verdict for the defendant. The testimony in the record justifies the following fact findings:

The defendant was a corporation engaged in the production of oil in what is known as the Markham oil field, and, at the time of the death of Will Hodges, was engaged in drilling an oil well in said field. For this purpose it had constructed a derrick 84 feet high, having a 20-foot base, and being 4 by 6 feet at the top. The deceased was known as the "derrick man" and his work, as such, was performed upon the triple board, some 50-odd feet above the ground. The triple board consisted of two pieces of 2 by 12 lumber, extending across the derrick and resting on girders on both sides. These were for the derrick man to work upon when the drill pipe was being lowered into or withdrawn from the well. The drill pipe consisted of joints of pipe each about 20 feet in length, screwed together, and upon being withdrawn were uncoupled so that three joints of the 20-foot pipe would remain in one section. There was also what is known as a "finger board" made of 2 by 6 timber with a notch in the end to lay pipe in preparatory to attaching them to the elevator to lower the pipe in the well. The finger board is fastened to a girder at the same level as the triple board, and one end extends to the middle of the derrick, and the witness Marks says that:

"In a properly constructed derrick the finger board is about 3 feet, 8 inches from the derrick wall—about a step from the derrick wall to the finger board."

He further says that:

"When the derrick man is engaged at work in the derrick, coupling his pipe with the elevator, he works with one foot on the finger board and one foot upon the derrick."

Ordinarily the finger board should be on a level with the triple board or the end of the inside of the derrick should incline slightly upward, but it appears that the finger board on the derrick in question inclined downward, so that the end was some 3 or 4 inches lower than the girder to which it was fastened.

The witness Tate testified that:

"In regard to placing the finger board for safety, as to whether it is placed level or lower or raised at the notched end and where a man stands, I will state that the end extending out into the derrick should be a little bit higher than the end that is nailed to the girts of the derrick. * * * We have the projection inside of the derrick upward a little for several reasons, it is an advantage to the derrick man because in case of wet weather it will be less danger of a man's foot slipping off the end, although his foot could slip if it is turned up a little. The effect of his foot slipping off the end, if there is nothing there to catch in the center of the derrick, would be that he would fall."

It was shown that other corporations engaged in drilling oil wells in the Markham field used safety belts for the protection of their derrick men while engaged in the performance of their duties. The witness Marks described safety bets and their uses as follows:

"A safety belt is made out of 3-inch heavy harness leather, with two straps fastened across each shoulder, across the back and front, making a cage that you can't fall out of, whether you fall head forward or feet, you can't get out of it. A heavy ring is attached to the back, and we use a rope, ordinarily a three-fourths inch rope tied onto the girt or brace of the derrick. Equipped that way, if the derrick man should slip and fall, the effect would be that he would be caught on the rope; in other words, he would be caught, and would not fall."

The witness Tate testified:

"The purpose of using the safety belt is in case a man falls or slips it will catch him and hold him; it prevents him from falling to the floor and sustaining injury. I know that safety belts could have been obtained and procured by the Swastika Oil Company on or before the 2d day of March, 1915" (the date Will Hodges was killed).

George Hathaway testified:

"I have used safety belt in the derrick work. The safety belt keeps a man from falling."

W. A. Hodges, brother of the deceased, testified:

"I did request the defendant Swastika Oil Company to procure for Will Hodges a safety belt. I made the request of the foreman, R. L. Hamil, and he told me that his brother, Kirk Hamil, did not approve of life belts, and that he did not think he would buy it because the expense was running so high he would 'kick' on it as he had on many other things. The Swastika Oil Company has procured safety belts, but they never did procure one for Will."

The only person shown to have been present at the time Will Hodges fell was Ellis Hamil, and we give his testimony in full:

"I was present in the Markham oil field on the 2d day of March, 1915, working in the derrick where the deceased, Will Hodges, was at work. At that time I was working right at the ropes, right in the center of the derrick, on the platform, I cannot tell the jury how Will Hodges lost his life, any more than that he fell. I was at the ropes at the time he fell—I had just closed the sides. At the time Will Hodges fell he was working in the derrick on the triple board, and fell from that point. I did not see him fall, but I heard him halloo, and looked up, and I left the floor because I could not see what it was that was falling. I saw something falling and I got out of the way, and later I found that this object that was falling was Will Hodges. I did not see him fall; that is, when he started to fall I did not see him, and I don't know how it happened. All I know about it is that I heard him halloo and saw something falling, and I did not know until he hit the floor what it was that was falling. I don't know the cause or reason that he fell. There was nothing wrong with the derrick that I know of, but I don't know much about them. As far as I know the derrick was in good shape. I was not up on the triple board. I have been up there, but I don't work up there, at all."

Plaintiffs did not allege that the defendant was not a subscribing employer to the Texas Employers' Insurance Association organized in virtue of chapter 179, Acts of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, Arts, 5246h-

5246zzzz), commonly known as the "Employ-ers' Liability Act," or that the defendant had in its employment at the time of the death of Will Hodges more than five employés. Proof was admitted, however, that the defendant then had in its service six employés.

[1] We are of the opinion that no action-able negligence was shown by the testimony in respect to the allegations of defectiveness in the construction of the finger board, or, at least, if negligence was proved it was not shown that the defectiveness was the proxi-mate cause of the injury. It was shown that the deceased was working upon and fell from the triple board, and no attempt was made to show that the triple board was de-fectively constructed. It was further shown that the derrick man, the deceased in this in-stance, would not have occasion to use the finger board for a resting place for his feet unless the work then being performed was the withdrawal from or lowering into the well the drill pipe, and the evidence does not indicate that such work was then being done, although it would have been a simple matter to prove it had such been the case. Nor does the evidence sustain the allegation that the defendant required the deceased to work in the derrick on the rainy day on which he was killed, or that to work in such a place on such a day was so dangerous that the defend-ant in the exercise of the degree of care that a reasonably prudent person would exercise under like circumstances was negligent in re-quiring or allowing its employé to work there. The evidence as a whole merely shows that the deceased while at work upon the triple board fell therefrom, without any explana-tion of the cause of his fall. In the absence of any evidence showing that the board was a resting place for his foot, negligence, as the proximate cause of his fall, cannot be predicat-ed upon the fact that the finger board inclined downward instead of upward, and it was shown by one witness that the foot could slip from it even if it were inclined upward.

[2] But we think that the evidence was sufficient to raise the issue of actionable neg-ligence upon the part of the defendant in failing to furnish deceased with a safety belt, and that that issue should have been sub-mitted to the jury.

The deceased, in performing his duties as derrick man, worked upon boards placed upon the girder of the derrick at a height of more than 50 feet from the ground, where, in the absence of anything to hold to a slip of the foot or misstep meant almost certain death. Safety belts, such as described by the witness Marks, whose testimony has been quoted, were in frequent if not in common use in the oil fields, to protect employés working at just such places as the deceased was when he fell; and by their use such an accident as befell the deceased could be avoided. It was testi-fied by the witness Tate that before the time the deceased fell the defendant could have procured such belts, and the witness W. A.

Hodges, the brother of the deceased, testified that the defendant had procured such belts, but did not procure one for the deceased, although he had requested the defendant's foreman to do so, who refused on the ground of expense. The question of assumed risk is not before use as that defense was stricken out by the court in sustaining a special exception to that part of the defendant's answer which asserted it.

We think that in view of the foregoing facts it was for the jury to say whether the defendant was negligent in failing to furnish the plaintiff with a safety belt, and that the court erred in taking the case away from them by instructing a verdict for the defend-ant, and that for this error the judgment must be reversed.

In view of another trial we shall pass up-on other assignments of error presented by the appellants.

[3] It was not error for the court to over-rule plaintiff's special exception to that part of the defendant's answer which pleaded con-tributory negligence of the deceased. If the defendant's rights of defense in this regard are not controlled by section 1 of chapter 179 of the acts of the Thirty-Third Legislature (General Laws 1913, page 429), contributory negligence is an absolute defense; if they are, the defense is allowed, not as avoiding lia-bility, but in diminution of the damages in the proportion to the amount of negligence attributable to the employé.

[4] On the trial the witness Tate, while testifying for plaintiffs, after testifying about the triple board and finger board, and the condition of the weather on the day the de-ceased fell, further testified that it was a very disagreeable day to work, especially in the derrick, and that it was very hard for the derrick man to get the pipe from behind him. He was then asked: "Would or would not that make it an unsafe place to work?" Objection to this question was made by the defendant and sustained by the court. Had the witness been permitted he would have answered: "It would." A similar question was asked the witness George Hathaway, and an objection thereto sustained by the court.

We think there was no error committed by the court in sustaining the objections. The defendant owed to the deceased only the duty to use ordinary care to furnish him a reason-ably safe place to work. If it performed this duty it discharged its obligations to him in this regard; therefore the question, if proper to be asked the witness at all, should have been confined to an inquiry as to whether the place so furnished was one that was reason-ably, and not absolutely, safe.

[5] But we further think that the question was improper, for the reason that it called for the conclusion of the witness in regard to a matter that was within the sole province of the jury to determine. The witness should have been confined to stating the conditions as they existed, leaving it for the jury to de-

termine whether, under all the facts, the place was a reasonably safe one for the deceased to work. Consumers' Lignite Co. v. Hubner, 154 S. W. 254; Railway v. May, 115 S. W. 901; Railway v. English, 59 S. W. 628. The fourth, fifth, and sixth assignments raising the points are overruled.

[6] The ninth assignment is not followed by a statement as required by the rules, and cannot therefore be considered. Other assignments of error presented for a reversal have been carefully examined by us, and we are of the opinion that they do not point out reversible error.

We come now to a consideration of cross-assignments presented by appellee.

[7] The first complains of the action of the court in sustaining plaintiffs' exception to the defendant's plea of assumed risk. By its proposition under this assignment it is urged that the defense of assumed risk is available except in certain exceptional cases provided for in the Employers' Liability Act; and that where the pleadings of the plaintiff failed to show the plaintiff came within the provisions of that act, assumed risk was a defense. The first section of that act (Acts 33d Legislature, page 429, brought forward in Vernon's Sayles' Civil Statutes as article 5246h) provides:

"In an action to recover damages for personal injuries sustained by an employé in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense: * * * 3. That the employé had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employé to bring about the injury."

Section 2 of the act provides:

"The provisions of this act shall not apply to actions to recover damages for personal injuries or for death resulting from personal injuries to * * * employés of any person, firm or corporation having in his or their employ not more than five employés." Vernon's Sayles' Ann. Civ. St. 1914, art. 5246hh.

The fourth section of the act provides:

"Employés whose employers are not at the time of injury subscribers to said association and the representatives and beneficiaries of deceased employés who at the time of injury were working for non-subscribing employers cannot participate in the benefits of said insurance association, but they shall be entitled to bring suits, and may recover judgment against such employers, or any of them, for all damages sustained by reason of any personal injury received in the course of employment, or by reason of death resulting from such injury; and the provisions of section 1 of this act shall be applied in all such actions." Vernon's Sayles' Ann. Civ. St. 1914, art. 5246ii.

[8, 9] From the sections above quoted it will be seen that the defense of assumed risk is denied generally by section 1, while section 2 exempts from the operation of section 1 nonsubscribing corporations, firms, or persons not having in their employment more than five employés, while section 4, in general terms, makes the provisions of section 1 applicable in all suits for the recovery of damages for personal injuries of employés or injuries resulting in death, except those employés who at the time of the injury or death are working for subscribing employers. Thus the two sections are apparently in conflict. But it is a cardinal rule in the construction of statutes that:

"All the parts * * * are to be looked at together, and one part may control another. If possible they are to be reconciled. Thus, where there are words expressive of a general intention, and then of a particular intention incompatible with it, the particular must be taken as an exception to the general, and so all parts of the act will stand." Howard Oil Co. v. Davis, 76 Tex. 633, 13 S. W. 665.

In view of the foregoing rule of construction we think that the particular intent of the Legislature exempting from the operation of section 1 of the act employers who do not have in their employment more than five employés, controls the general provisions of that part of section 4 which declares that the provisions of section 1 shall be applied in all actions for damages against employers who are nonsubscribers to the association. In this view, section 4, being construed with section 2, should be interpreted to mean that the employés of nonsubscribing employers may recover judgment against their employers for all damages sustained by reason of any personal injuries received in the course of employment, or by reason of death resulting from such injury, and the provisions of section 1 of the act shall be applied in all such actions, provided that such employers had in their employment more than five employés. This construction harmonizes the apparent conflict between the two sections and permits both to stand.

It follows, we think, that the defense of assumed risk is not denied to an employer who does not have in his service more than five employés, and is not available to employers who have in their employment more than five employés. This being true, the plaintiffs, if they desired to bring their case in the class of cases in which such defense is denied, should have alleged the necessary facts, and as they did not do so, we think the court should not have sustained the exception to the defendant's plea of assumed risk.

The other cross-assignment is directed to a matter which will doubtless be cured by an amendment of the plaintiffs' pleadings, and need not therefore be discussed, further than to say that in view of the plaintiffs' pleadings the assignment should be sustained.

For the error indicated the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.