### ST. LOUIS, S. F. & T. RY. CO. v. WILLIAMS et al.

No. 13515.

Court of Civil Appeals of Texas. Fort Worth.

March 12, 1937.

Rehearing Denied April 9, 1937.

J. W. Jamison, of St. Louis, Mo., and Allen & Gambill, of Fort Worth, for appellant.

C. C. McDonald, of Wichita Falls, and Albert J. Baskin and B. Y. Cummings, both of Fort Worth, for appellees.

BROWN, Justice.

This cause arises out of a collision between one of appellant's switch engines and an automobile driven by one George H. Williams, on West Seventh street in the city of Fort Worth, Tex., where appellant's track crosses such street.

Williams was killed in the accident, and the parties who brought the suit are the surviving widow, the mother, and the daughter of the deceased.

The grounds of negligence, on which recovery is sought, are: (1) Failure to keep a lookout for persons using the street; (2) failure to sound the locomotive whistle; (3) failure to ring the bell; (4) failure to have a sufficient light on the north end of the locomotive (it was a locomotive used for switching purposes); (5) failure to have a switchman at the crossing; (6) the operation of the train at a dangerous rate of speed.

The appellant railway company denied the allegations of negligence on the part of its employees and pleaded contributory negligence on the part of the deceased as follows: (1) In driving upon the railway track immediately in front of and in plain view of the moving train; (2) failing to look for an approaching train before going upon the crossing; (3) failure to listen for the approach of the train before going upon the crossing; (4) failure to stop or slacken the speed of the automobile so that he could ascertain whether or not a train was approaching in ample time and at an ample distance to prevent injury to himself; (5) driving the automobile at a negligent rate of speed; (6) failure to keep the automobile under proper control.

West Seventh street is one of the main thoroughfares in the city of Fort Worth, and a part of the main east and west highway leading into and out of the said city.

The case being tried to a jury and submitted on special issues, the jury found, in substance, that the whistle was blown; that the bell was rung; that the headlight on the tender of the switch engine was burning, and that the railway company was not negligent in not having switchmen at the crossing; but found that the train was being operated at 20 miles per hour and that such rate of speed constituted negligence; that the defendant's employees in charge of the engine and train failed to keep a proper lookout to discover persons who might be approaching the crossing; and that this constituted negligence. The jury further found that the deceased was driving at 20 miles per hour, but that such rate of speed was not negligence on his part, and otherwise found favorably to the plaintiffs on the issues submitted as to negligence on the part of the deceased and awarded damages.

Judgment being rendered, from this judgment a proper appeal has been taken by the railway company.

There are 36 assignments of error, supported by 15 propositions. We will not consider all of the assignments of error as many of them will, in all likelihood, not occur upon another trial.

It appears that W. W. Dickson, who was the conductor in charge of appellant's train, and T. B. Stepp, who was the locomotive engineer in charge of appellant's locomotive which collided with deceased's automobile, gave oral depositions before a notary public in Tarrant county by agreement of attorneys for all parties concerned, but that such depositions were not signed by either of these witnesses; that both of said witnesses were in the courtroom when the case was called for trial and were available as witnesses at the hearing; that appellees (plaintiffs below) desired to introduce these depositions and objection was made on the part of appellant that the depositions had never been completed and returned in accordance with the statutes of Texas, and the trial court made inquiry of the two witnesses to

ascertain why the depositions had never been signed by them, whereupon they advised the trial court that under advice of counsel they had declined to sign same; that each testified that, so far as they knew, the depositions were correct, although it appears that neither of these witnesses read over the depositions. At this juncture, the trial court ordered the witnesses to sign the depositions and then proceeded to permit appellees to introduce same in evidence.

■ We have made diligent search and are unable to find any case where such a proceeding was ever had before in a trial court. We are frank to say that we do not believe the trial court had the authority to compel these witnesses to sign their depositions. Furthermore, we do not believe that the officer who attempted to take the depositions, under agreement of the parties, had any authority to compel the witnesses to complete the depositions by signing same. In the event such officer should attempt to complete the deposition by causing the witness to examine and sign same, if found to be correct by such witness, if any such witness, after examining the questions and answers, concludes that same are not correct, the witness is undoubtedly well within his rights when he refuses to sign the same, unless changes are made correcting the errors which such witness declares he has found in his answers. In the event such witness should be denied the right to change his answers, it must, of necessity, be true that he could not be compelled by any court to sign the deposition and same could not be used as a deposition upon the trial of the cause in question. Furthermore, we believe that any witness whose deposition has been taken in the manner and under the circumstances disclosed in this cause, cannot be compelled to sign the deposition even if he gives no reason for his refusal to sign.

As was said in Reilly .v. Buster, 125 Tex. 323, 82 S.W.(2d) 931, 933, by the Commission of Appeals:

"As the taking of testimony by depositions is purely a matter of statute, it is required that the statute be substantially and fairly complied with in all of its provisions."

Even when taken under the strict provisions of the statute (Rev.St.1925, art. 3738 et seq.), we find no authority over the witness vested in the trial court before whom the cause is pending, in which the deposition is to be used. The authority, such as it is, is vested in the officer to whom the commission to take the deposition is directed.

In the instant suit, the deposition was attempted to be taken by virtue of a waiver of the statutory formalities, necessary to secure the commission, and also a waiver of such commission. Not having been completed, and being without the voluntary signature of the witnesses, the trial court was without authority to compel the witnesses to sign, and it cannot be said that they are depositions admissible as such in evidence.

■■ We desire to say, however, that should a witness, whose deposition has been taken and who has not signed and completed the deposition, appear in person as a witness and testify to facts contradictory to the facts testified to when his deposition was taken, the officer before whom the deposition was taken can be introduced as a witness for the purposes of impeachment and testify to such facts and that he can read from his notes to show the former answers given by such witness. As a matter of course, the witness would be given the privilege of explaining why the former answer was incorrect, if his contention was such. Inasmuch as it does not appear from appellant's brief that any injury has flowed to the appellant, and it further appearing that the answers of the witnesses given in their depositions are substantially the same as the answers given on the witness stand at the hearing, the error is perhaps harmless and we would not feel the necessity of reversing the case because of the error. But we desire to say that if it should be made to appear that probable injury ever was done the complaining party under such circumstances, we would not hesitate to reverse the judgment of the trial court. And we here hold that the depositions cannot be introduced at the next trial as depositions over the objection of appellant.

Under the circumstances, the assignments of error predicated upon these proceedings are overruled.

■ The next group of assigned errors complain of questions propounded by counsel for the plaintiff below to these same witnesses, for the purpose of establishing the fact that the crossing where the accident occurred was an unusually dangerous crossing, and for the purpose

of establishing what constitutes ordinary care and negligence on the part of the trainmen interrogated. As we view these issues, we are of the opinion that the facts only should be elicited from the witnesses, and that questions which elicit opinions and conclusions on the part of the witnesses as to whether or not the crossing in question was an unusually dangerous one, and what were the duties of the respective employees at the time and under the circumstances, were erroneously permitted by the trial court. Let us illustrate: Appellees, in interrogating Dickson, the conductor, concerning the crossing where the collision occurred, propounded this question:

"Q. And you recognize it, on account of the vast volume of automobile traffic, as being one of the most dangerous crossings on your line?"

This question was objected to by appellant because it called for an opinion and conclusion of the witness and asks the witness to invade the province of the jury, and by his answer to determine something that should be determined by the jury. The objection being overruled and exception taken, the witness was permitted to answer, "Yes, sir."

The further question was asked this witness:

"Q. And it is an extraordinarily dangerous crossing, isn't it?" To which the witness was permitted to answer, over proper objection, "Well, I judge it is."

The witness was asked the following question:

"You recognize it, do you not, as being your duty to approach that crossing at a rate of speed where a stop could be made within the range of your vision?" Proper objection being made, overruled, and exception taken, the witness was permitted to answer, "Yes, sir."

The following question also was asked the witness:

"And you know, as a railroad man, do you not, that a crossing as dangerous as that one is requires that no instant of time be lost in keeping a lookout for persons who might be using that track, don't you?" To which the witness was permitted to answer: "Yes, sir."

Also the following question:

"It is very difficult, and therefore, you recognize it to be the duty for somebody to be on the watch every instant of the time while the train is moving across Seventh Street?" To which the witness was permitted to answer: "Yes."

We will not burden this opinion by copying a number of other questions of like import propounded to the witness Dickson, who was the conductor in charge of appellant's train, and to the witness Stepp, the engineer in charge of the locomotive, concerning these matters, all of which were properly objected to.

Our conclusions seem amply supported by the following cases: Shelley v. City of Austin, 74 Tex. 608, 12 S.W. 753; International & G. N. Ry. Co. v. Kuehn, 2 Tex.Civ. App. 210, 21 S.W. 58; Southern Kansas Ry. Co. v. Cooper, 32 Tex.Civ.App. 592, 75 S.W. 328; Consumers' Lignite Co. v. Hubner, (Tex.Civ.App.) 154 S.W. 249; Hodges v. Swastika Oil Co. (Tex.Civ.App.) 185 S.W. 369; Southern Kansas Ry. Co. v. McSwain, 55 Tex.Civ.App. 317, 118 S.W. 874, 875; Sonnefield v. Mayton (Tex.Civ.App.) 39 S. W. 166; Mayton v. Sonnefield (Tex.Civ. App.) 48 S.W. 608; Ebert v. Gulf, C. & S. F. Ry. Co. (Tex.Civ.App.) 49 S.W. 1105; Dallas Electric Co. v. Mitchell, 33 Tex.Civ. App. 424, 76 S.W. 935; Gulf, C. & S. F. Ry. Co. v. Hays, 40 Tex.Civ.App. 162, 89 S.W. 29; San Antonio Traction Co. v. Flory, 45 Tex.Civ.App. 233, 100 S.W. 200; Gulf, W. T. & P. Ry. Co. v. Wittnebert (Tex.Civ.App.) 104 S.W. 424.

The next assignment of error complains of the trial court's charge defining negligence, which is as follows:

"Negligence, as that term is used in this charge means a failure to exercise that degree of care which the ordinarily prudent person would exercise under the same or similar circumstances, or the doing of that which an ordinarily prudent person would refrain from doing under the same or similar circumstances."

Appellant's objection to this portion of the charge is that same is confusing and misleading, in that it expressly tells the jury that the "doing" of that which an ordinarily prudent person would refrain from doing under the same or similar circumstances constitutes negligence, but does not at the same time instruct the jury that the omission to do that which a person of ordinary prudence and care would do under the same or similar circumstances constitutes negligence. We believe that the charge is undoubtedly subject to the criticism made and that it is incomplete, confusing, and

misleading. The defendant was entitled to a clear and correct charge because it had specifically pleaded a number of omissions on the part of the deceased as contributory negligence, and the plaintiffs below had pleaded a number of omissions on the part of appellant's employees.

■ The Supreme Court expressly approved the opinion written by Mr. Justice Critz in City of Waco v. Diamond, 65 S.W. (2d) 272, 273, wherein a proper definition of negligence was given as follows:

"Negligence is the doing of something that a person of ordinary prudence would not have done under the same or similar circumstances, or the failure to do something that such a person would have done under the same or. similar circumstances."

The Supreme Court of Iowa in Stokes v. Sac City, 151 Iowa, 10, 130 N.W. 786, had an incomplete charge on negligence before it quite similar to the one here under review, and we cite this case because of the splendid opinion. It was undoubtedly necessary for the trial court to give in a charge to the jury a correct definition of negligence, and we hold that this was not done in the instant case. 30 Tex.Jur. 385; Dallas Ry. Co. v. Bankston (Tex.Com.App.) 51 S.W. (2d) 304.

■ The next assignment of error complains of the trial court giving the following special issue to the jury without defining the term "unusually dangerous crossing":

"Do you find from a preponderance of the evidence that at the time and place of the collision in question that West Seventh Street was an unusually dangerous crossing?"

We believe this assignment is well taken.

Mr. Justice Critz, speaking for the Commission of Appeals, in the case of Missouri, K. & T. Ry. Co. v. Long, 299 S.W. 854, 855, in an able opinion established the rule that the refusal to explain or define the term "more than ordinarily dangerous as a nighttime crossing," was error. The case is so similar to the instant suit that we are content to cite it alone in support of our conclusions.

The next assignment of error complains of the giving of special issue No. 10 as follows:

"Do you find from a preponderance of the evidence that the defendant's employees in charge of the engine and train in question failed to keep a proper lookout to discover persons who might be approaching the crossing in question on the occasion in question?"

■ The objection made by appellant is that such issue places a higher duty upon the defendant than rested upon it under the law and evidence of the case, and was so worded that it permitted the jury to answer the question affirmatively, even though the jury might be of the opinion that the employee, or employees, upon whom rested the legal duty to keep a proper lookout, had done so. And, further, because the issue was upon the weight of the evidence and assumed generally that "the defendant's employees, in charge of the engine and train in question" were duty bound to keep a proper lookout, and that the failure to do so on the part of all or any of them would constitute negligence. We believe the objection well taken. Let us illustrate the thought we have here: It is a matter of common knowledge that the engineer has a place on one side of the cab of a locomotive and the fireman on the other side. When there is a collision at a public crossing between an engine and a person using such crossing, the fact of which employee, the engineer or the fireman, is on the side toward which the person approaching the railroad crossing is, depends absolutely upon whether the engine is going forward or backward. It could reasonably be said that the employee on the opposite side of the engine, who was in no position to see the approaching person, is under no duty to keep a proper lookout for him. What we have said with respect to these two employees in charge of the engine is equally applicable to the conductor, flagman, and brakeman, if all, or any of such persons be employed on a train which has an accident at a crossing. What we are trying to say is simply this: The facts should be developed which show, if they may be made to do so, just what employees were in a position to keep a proper lookout and whether or not the employees were in the places where they ought to have been just before the collision, and the issues should be submitted to the jury covering the conduct of such person or persons, whose duty, under the facts, it would be to keep a proper lookout. 41 Tex.Jur. p. 1100, par. 273.

The next assignment of error complains of the action of the trial court in giving an issue to the jury limiting the jury to a mere inquiry as to whether or not the deceased did or did not fail to slacken the

speed of his car before going on the railroad track when the pleading and evidence raised the ultimate issue of whether or not the deceased failed in approaching the railroad crossing, to slacken the speed of his automobile sufficiently, or at such a time and place as to enable him to discover the approaching train in time and at ample distance to enable him to avoid the collision. And complaint is made of the refusal to give appellant's requested charge on the issue raised. The charge actually given is:

"Do you find from a preponderance of the evidence that as the said George Williams on the occasion in question approached the tracks in question that he failed to slacken the speed of the automobile he was driving before attempting to cross said tracks?"

It was seasonably and properly objected to by appellant, and at the same time the following issue was requested and refused:

"(a) Do you find from all the facts and circumstances in this case that the said Geo. Williams failed to slacken the speed of the car he was driving sufficiently to enable him to discover the approach of the defendant's train before attempting to cross the track of the defendant at the time and place of the collision, which caused the injury and death of the said Williams?"

We think the error is apparent. To merely ask the jury to find, under the facts and circumstances disclosed in this case, whether or not the deceased, as he approached the railroad tracks, failed to slacken the speed of his automobile, before attempting to cross the tracks, is not enough to meet the requirements made necessary under the pleadings and the facts. The accident happened in the city limits, less than half way between the center of the city and its western boundary, and just after 1 o'clock a. m., on a rainy night. The street is a much traveled highway, about 100 or more feet wide. It is almost level, there being but little grade, where the street and appellant's track intersect and cross. The deceased was thoroughly familiar with the surroundings and the general conditions. The evidence shows that long before one traveling on Seventh street arrives at the track crossing it, one can see a train approaching the highway crossing in ample time to stop an automobile going at a lawful rate of speed.

The testimony discloses and the jury found that the "headlight" on the tender of the switch engine was burning; that the bell was rung, and that the whistle was blown, as the engine approached the street crossing; and that the railroad company was not negligent in not having a watchman at the crossing at the time.

We cannot close our eyes to the fact that, under all these facts and circumstances, it was the duty of the deceased to keep a proper lookout for the train, and it was manifestly a proper inquiry to ascertain whether or not the deceased in approaching the crossing failed to slacken the speed of his car sufficiently to enable him to discover the approach of the train in time to avoid the accident.

Let these facts be remembered: The train is limited to its tracks. It can neither move to the right, nor to the left. It is extremely heavy and more or less unwieldy. An automobile is easily steered from one side of the road to the other and, because of its light weight, is, by far, more easily stopped than a train, or an engine without cars attached to it.

In the case before us, the bell was rung, the whistle was blown, and the headlight on the engine's tender was burning—all to give warning of the approach of the engine to the street crossing.

If the deceased had slackened the speed of his automobile sufficiently, he could have seen the headlight and heard the whistle and the bell, before he reached the crossing. If he had so acted, he could have avoided the accident.

All these facts a jury could find amply supported by the evidence. The defendant was entitled to have the jury charged substantially as requested. The general rule laid down in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, supports our position in the instant suit.

We will not notice the other assignments of error, as they will in all probability not arise upon another trial.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded.